Keeler v. State.

AFFIRMED.

GEORGE KEELER ET AL. V. STATE OF NEBRASKA.

FILED APRIL 5, 1905.   No. 13,870.

1. Juror: CHALLENGING. If the *voir dire* examination of a juror considered as a whole does not show incompetency, a challenge upon that ground is properly overruled, although during his examination statements are made which, if unexplained, might be ground for challenge.

2. Verdicts in criminal cases should be certain and import a definite

meaning free from ambiguity. If the meaning of the verdict in the light of the whole record is clear, beyond any reasonable doubt, it is sufficient.

3. **Juror:** CHALLENGING. It is not ground for challenge that a juror is more than sixty years of age.

4. **Verdict:** SIGNING. If the record shows that T. Blankenbeckler was a member of the jury, and the verdict is signed "T. P. Blankenbeckler, Foreman," it will be presumed that the person so signing was the same person designated as T. Blankenbeckler in impaneling the jury.

5. **Instruction:** REASONABLE DOUBT. The instruction attempting to define a reasonable doubt in *Spies v. People*, 122 Ill. 1, has been frequently disapproved by this court; but when it is carefully guarded, and it appears from the whole record that the jury have not been misled thereby, the giving of this instruction will not require a reversal.

6. ———: REVIEW. It is not error to refuse a requested instruction if the same matters are substantially covered by instructions given.

7. **Venue:** EVIDENCE. If it appears from the whole evidence, beyond a reasonable doubt, that the crime charged was committed in the county of the trial, the venue is sufficiently proved.

8. **Burglary:** Evidence. In a prosecution for burglary, the charge that it was committed in the night season is to be proved like any other fact. If the whole evidence shows that fact beyond a reasonable doubt it is sufficient.

9. ———: ———. In a criminal case it must be proved beyond a reasonable doubt that the defendant committed the crime charged. If the fact that the crime charged was committed is proved beyond all doubt, it is still not sufficient to prove that the defendant had opportunity to commit it, and may have been the guilty party, but, if the evidence excludes all reasonable doubt, it is sufficient.

10. **Sentence.** It is in the discretion of the trial court, upon a vedict of guilty, to prescribe the punishment within the limits fixed by the statute. This court will not ordinarily interfere with that discretion unless it is manifest from the evidence that the punishment inflicted is excessive. When two or more defendants are tried together for the same offense, and different penalties are inflicted, and it appears from the evidence that the defendant receiving the least punishment is at least equally guilty, it may become necessary for this court to determine from the evidence, as an original question, whether the punishment of the defendants or some of them should be reduced.

ERROR to the district court for Burt county: ALEXANDER C. TROUP, JUDGE. *Judgment modified.*

*John M. Macfarland* and *H. Wade Gillis,* for plaintiffs in error.

*Norris Brown, Attorney General,* and *W. T. Thompson,* contra.

SEDGWICK, J.

In this case the plaintiffs in error seek to reverse a judgment of the district court for Burt county by which they were adjudged guilty of burglary and sentenced to a term of years in the penitentiary.

1. Exceptions were taken to the competency of several of the jurors as disclosed upon their *voir dire* examination. Four jurors are especially mentioned in the briefs, and special attention is called to the competency of the juror Benson. This juror was a foreigner by birth, but had resided in this county thirty-five years. He was a farmer and appears from his examination to be possessed of ordinary intelligence and information. The attorney for defendants examined him, and that part of his examination which is relied upon to show his incompetency is as follows:

Q. You understand that the presumption of the innocence of a defendant is a matter of evidence that follows him through all the case?

A. Yes, sir.

Q. If you have a reasonable doubt as to the evidence, do you think your mind is in such a condition that you can freely give these defendants the benefit of that doubt?

A. I have no idea either one way or the other.

Q. This is the question I ask you, if after hearing the evidence in the case and the law, then you have a reasonable doubt, do you feel, if the court tells you to do so, that you could freely give the defendants the benefit of that doubt? (Not answered.)

Defendants' Attorney: Now, after you hear all the evidence and law in the case, and you have a reasonable

doubt as to the guilt of the defendants, do you feel that your mind is in such a condition you can freely give these defendants the benefit of that doubt?

Defendants' Attorney: Do you understand the question?

A. Yes, I understand it pretty well. I could not understand what you were driving at.

Q. The law says I shall ask you the question if after you hear the evidence of the witnesses and the instructions of the court there remains a reasonable doubt as to the guilt of the defendants, do you feel you could give them the benefit of that doubt freely?

A. No, sir.

Q. They would have to prove themselves innocent, would they?

A. Yes, sir.

The juror was thereupon challenged "for cause." The court then questioned the juror and was answered, as follows:

The Court: Do you understand that it devolves upon the state to prove the defendants guilty and they need not open their mouths at all as to their guilt or innocence?

A. I don't understand that really, ask that again?

Q. You understand the law to be that it devolves upon the state of Nebraska to prove these defendants guilty and they need not open their mouths at all as to their guilt or innocence, do you understand that?

A. I do.

Q. That being so, and there should be a reasonable doubt as to the defendants' guilt, the law is that the defendants should have the benefit of that doubt; now the question is, that being the law, can you freely and willingly give to the defendants the benefit of that doubt?

A. Yes, I understand what it is now.

Defendants' Attorney: With that understanding you think you can try the case on the evidence of the witnesses and the law as given you by the court?

A. Yes, sir.

The juror then stated that he was sixty-five years old, and was challenged by defendant upon that ground. The former challenge as to his competency was not renewed. This would be sufficient ground for the conclusion that the former challenge was waived, and that the ruling thereon could not now be cause for reversal. But, as stated in the brief, the answers of this juror furnish a fair illustration of the general ground for challenge of jurors upon which the defendants rely. It is said in the brief that the juror "states that he understands that it is the law of the state that the defendant should prove himself innocent, does not say that he would give them a fair and impartial trial, nor that he would give them the benefit of the doubt." This is not a natural construction of the juror's answers. His answers taken together show that he did not understand the technical meaning of some of the language used by the court and counsel in framing their questions. But they do not show that he had any incorrect ideas of his duty as a juror. Objections to the competency of other jurors are mostly similar in character. No sufficient grounds for these objections are pointed out in the brief.

2. The jury returned a verdict as follows:

"VERDICT OF JURY.

"THE STATE OF NEBRASKA, ⎫ ss.
        BURT COUNTY,      ⎭

"Adjourned February Term, A. D. 1904, to wit:....190..

"THE STATE OF NEBRASKA, ⎫
                Plaintiff,
        v.
GEORGE KEELER, THOMAS GRAY
    alias THOMAS ROGERS, AND
    SAMUEL T. BRADLEY alias
    SAMUEL T. BULLIS,
                Defendants. ⎭

"We, the jury in this case, being duly impaneled and sworn to try said case, do find the said defendants George

Keeler, Thomas Gray alias Samuel T. Bradley alias
Samuel T. Bullis, and each of them guilty of burglary in
manner and form as charged in the information.

"T. P. BLANKENBECKLER, *Foreman.*"

It will be noticed that the name "Thomas Rogers" is
omitted after the word "alias" in connection with the
name of the defendant Thomas Gray. That is, in the
verdict the name is "Thomas Gray alias" instead of
"Thomas Gray alias Thomas Rogers" as he is named in
the information. It is insisted that this verdict is invalid
at least as to two of the defendants because they are not
named therein with sufficient certainty. The views that
obtain in the different states are not entirely harmonious
as to what irregularity in this regard will vitiate the ver-
dict. In Texas a verdict that the defendant is "guilty in
the fist degree" is not a good verdict (*Wooldridge v. State*,
13 Tex. App. 443, 44 Am. Rep. 708), nor one which finds
the defendant "guity" (*Harwell v. State*, 22 Tex. App.
251, 2 S. W. 606) ; but in Florida a verdict which finds the
defendant "guily" is good. *Higginbotham v. State*, 42
Fla. 573, 29 So. 410, 89 Am. St. Rep. 237. Many other
peculiar holdings may be found in the reports, but we are
satisfied with the rule of the Florida court. It was, in the
case referred to, quoted from a former decision of that
court as follows:

"Verdicts in criminal cases should be certain and im-
port a definite meaning, free from ambiguity. Any words
which convey, beyond reasonable doubt, the meaning and
intention of the jury are sufficient, and all fair intend-
ments will be made to support the verdict. If the inten-
tion is clearly manifested, bad spelling or faulty grammar
will not vitiate the verdict."

*Williams v. State*, 6 Neb. 334, is not inconsistent with
this rule. In that case the jury found no one guilty and
of course the verdict was insufficient. Under the liberal
rule above stated it is doubtful whether this verdict could
be upheld as against all of these defendants, if the descrip-

tion of the parties found guilty by the jury was not made more definite and certain by reference to other parts of the record. To determine the meaning of the verdict all the parts of the record must be taken into consideration; the indictment and instructions, and in some instances, as in this case, the polling of the jury may be considered. If upon the whole record, so construed, it is clear beyond any reasonable doubt that the jury found the defendant or defendants, who were being tried, guilty of the charge contained in the indictment, the verdict is sufficiently definite. The court in its instructions gave the jury five different forms of verdicts which might be used by the jury from which to select the one which conformed with their finding. Among these forms was the following: "We, the jury, duly impaneled and sworn to try the issues joined in the above entitled cause, do find the said defendants George Keeler, Thomas Gray alias Thomas Rogers, and Samuel T. Bradley alias Samuel T. Bullis, and each of them, guilty of burglary in manner and form as charged in the information." When this verdict was received, the jury were polled. This appears from the record as follows: "Thereupon, on request of defendants, the jury were polled, and each of the jurors, being separately asked, 'Was and is this still your verdict as to the defendand George Keeler,' answered, 'yes,' and, being further separately asked, 'Was and is this your verdict as to the defendant Thomas Gray alias Thomas Rogers,' answered 'yes,' and, being further separately asked, 'Was and is this still your verdict as to the defendant Samuel T. Bradley alias Samuel T. Bullis,' answered, 'yes.'" These defendants were all named correctly as defendants in the title of the case as stated upon the verdict, and each of the jurors, when the jury was polled, answered that the verdict rendered was intended by him to be his verdict as to each one of the defendants correctly named, and as named in the information. No reasonable person could doubt who were the parties found guilty by the jury, and the verdict must be held to be sufficient.

3. The challenge on the ground that the juror is over sixty years of age is of course not well taken. Sec. 657 of the code. The provision there is, that the juror must be over twenty-one years of age, and that he shall not be compelled to sit if he is over sixty years of age. The statute in regard to the qualifications of jurors in counties having 60,000 inhabitants can, of course, have no application in this case, even if it should be construed as defendants contend.

4. The verdict is signed "T. P. Blankenbeckler, *Foreman*," and the record of the impaneling of the jury shows that one "T. Blankenbeckler" was one of the jurors. It is contended that this discrepancy in the names raises the presumption that T. P. Blankenbeckler, who signed as foreman, was not a member of the jury; but the initial letter of one's middle name is not of so much importance as to have this effect, and the contention is without merit.

5. The defendants complain of instruction numbered ten given by the court upon its own motion. This is substantially the instruction given in the so-called *Chicago Anarchists'* case, attempting to define a reasonable doubt. It has recently been several times disapproved by this court. We consider it of doubtful propriety, and may, under some circumstances, become dangerous so as to require a reversal. In this case, however, it is carefully guarded, and in the condition of this record we cannot say that the defendants have been prejudiced by this instruction.

6. Nearly all of the instructions given were excepted to, and in the brief several are specified which it is claimed are erroneous. But we find no prejudicial error in these instructions. Many instructions were requested by defendants. Some of these appear to have been given by the court; others present matters that are fairly put before the jury in the instructions given. We do not find any error in refusing requested instructions. Questions upon the instructions are not mainly discussed in the brief. Upon the whole we think the instructions submit the case fairly to the jury.

7. The defendants object that the evidence was not sufficient to warrant their conviction. It is urged that the venue of the burglary is not sufficiently proved. It appears that at the close of the evidence the state recalled as witness the cashier of the bank, who had already testified in the case, and he was asked the question: "Where is this —What county and state is this First National Bank of Lyons, Nebraska, located in?" And he answered: "Burt county, Nebraska." If this was the only evidence in the record upon this point, the objection would be serious. Several witnesses, in describing the bank burglarized or in otherwise referring to it, spoke of it as being in Lyons, and other statements made by witnesses identify the location as in that town. Taking the whole evidence, there can be no reasonable doubt that the bank building in which the crime was committed was in Burt county.

8. It is also contended that the evidence does not show that the burglary was committed in the night season. It was the 16th of November. The cashier left the building between five and six o'clock in the evening. He testifies that it was "hardly dark," and again, on his cross examination, he was asked: "It was still light?" and answered: "I would not say it was light, I had lit a lamp and left it. We always would leave a lamp burning. * * * I would not say how dark or how light it was." A witness who was sleeping in a building not far from the bank testifies that during the night, he thought it was about two o'clock, he heard three several sounds of explosions in the direction of the bank. It appears that the burglary was discovered soon after daylight in the morning; that the team with which the burglars escaped was taken during the night, and was seen being driven rapidly from the scene of the burglary toward Hooper before daylight in the morning. From these and other circumstances disclosed in the record, the jury were clearly warranted in finding that the burglary was committed in the night time, beyond reasonable doubt.

9. The principal reliance of defendants appears to be

32

upon the insufficiency of the evidence to connect them with the burglary, so as to show beyond a reasonable doubt that they are the guilty parties. It was proved beyond question that the door of the bank building was broken open and the building was entered, and that the safe which contained about $1,400 in currency was broken open by the use of powerful explosives and the money contained therein was taken away. No one comes upon the witness stand and testifies as to having seen this done, and no one, of course, testifies as to having seen these defendants engaged in the act of committing this crime. Each one of these defendants was seen in the town of Lyons shortly before the commission of the crime. The defendant Keeler was known by several of the witnesses. He had been in Lyons upon former occasions. On those occasions he was dealing in horses and had a large number with him. The last time he was seen there in that occupation was a year or two before the robbery. During the few days immediately preceding the robbery he was seen there by several witnesses. He was not engaged in his former occupation and apparently had no business to attend to. The other two defendants were strangers in Lyons. It does not appear that any resident there had ever seen either of them there before. Immediately before the robbery they were seen several times by different citizens on the street in the town of Lyons. One of them was, at the noon hour, when it was not supposed that any one was in the bank, observed looking into the window of the Farmers Bank in an unusual manner, described by the witness as "Indian fashion." In the early morning after the robbery was committed, a team and buggy was stolen from a stable not far from the bank. This team was driven toward Hooper, a small town in Dodge county, and situated on the line of the railroad. It was driven so rapidly as to attract the attention of several who had opportunity to see it. When within about three miles of Hooper, the buggy, which was a two-seated vehicle, was hidden in the field, and the horses turned loose. At about seven o'clock that morning these

three defendants and another person were seen walking toward Hooper from the vicinity of the hidden buggy. When they arrived in Hooper, two of them went into a saloon and there inquired when the train left for Omaha. They found that they had arrived in Hooper a few minutes before the departure of the train. These three defendants and their companion, who has not been found, took the train which went directly from Hooper to Omaha; and a witness who was also on the train, and who observed their conduct which he described as peculiar, testifies that they remained on the train until near a small station before reaching Omaha; that he did not see them leave the train, but knows that they were not on the train when the train arrived at the Union Depot in Omaha. Another witness testifies that two of these defendants came into his place of business in Omaha on the 2d day after the robbery and bought something to eat, and one of them offered him in payment a $20 gold piece, and afterwards took out of his pocket and exhibited a handful of gold, consisting of $20, $10 and $5 gold pieces. The money stolen from the bank was in gold pieces of these denominations. The defendants were afterwards arrested in Kansas City. It is shown that the team and buggy referred to was stolen by the parties who committed the burglary. Articles that were plainly identified as being in the bank the night before the robbery were found in the buggy when it was first discovered after the robbery. There was no evidence tending to explain the presence of these defendants in Lyons immediately before the robbery, nor to show any legitimate business that these four men were engaged in together that could account for their arrival at Hooper, as they did on the morning of the robbery. There is no evidence that in any way explains any of the foregoing circumstances upon the theory that these defendants were not present at the robbery. The verdict of the jury is not so unsupported by the evidence as to require a reversal of the judgment.

10. One of these defendants was sentenced to a term of

seven years and two to a term of ten years each in the penitentiary. It is urged that these sentences are too severe and should be reduced by this court. Ten years is the extreme limit of the statute. Criminal code, sec. 48. The term prescribed is "not more than ten nor less than one year." It is left to the discretion of the court, who sees the witnesses and hears the evidence, to fix the punishment within these limits. The extreme penalty will not be imposed except in extreme cases. But this court will not interfere with the discretion of the trial court unless it is manifest from the evidence that the penalty inflicted is excessive. We discover nothing in the evidence to indicate that the defendant George Keeler, whose sentence was seven years, was less guilty than either of the other two defendants, whose sentences were for the term of ten years each. There is nothing in the record showing the age or experience of either of the other two defendants. But Keeler is shown to be a man of experience in business, and was undoubtedly aware of the enormity of the crime which he committed. Of course, if the penalty inflicted upon the other defendants was just, the fact that Keeler's punishment was less than his crime called for would furnish no ground for reducing their punishment. If these defendants had all been sentenced to the same term of imprisonment, we would not have considered it to be our duty under the evidence in this case to interfere with the discretion of the trial court, the punishment being within the statutory limit. But these sentences cannot all be justified from this evidence. We are called upon to say whether the term of imprisonment should be seven years or ten years for each of these defendants, and in this we are not assisted by the findings of the trial court. Determining it then as an original question, upon this record we conclude that the defendants Thomas Gray alias Thomas Rogers and the defendant Samuel T. Bradley alias Samuel T. Bullis should be sentenced to a term of seven years each in the penitentiary.

The judgment of the district court is therefore modified

so as to make the sentences of the defendants Thomas Gray alias Thomas Rogers and Samuel T. Bradley alias Samuel T. Bullis seven years each instead of ten years each in the penitentiary, and otherwise the judgment of the district court is affirmed.

JUDGMENT ACCORDINGLY.