STATE OF NEBRASKA, APPELLEE, V. CURTIS D. MORROW, APPELLANT.

369 N.W.2d 89

Filed June 14, 1985.   No. 84-572.

J. William Gallup, and, on brief, Anthony S. Troia, for appellant.

Paul L. Douglas, Attorney General, and Jill Gradwohl, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

A Douglas County jury found Curtis D. Morrow guilty of two counts of unlawful delivery of a controlled substance in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1984). The district court sentenced Morrow to a term of imprisonment for 1 to 2 years on count I for delivery of marijuana and $1\frac{1}{2}$ to 3 years on count II for delivery of cocaine. The sentences ran concurrently.

In the presence of an informant for the Nebraska State

Patrol on January 14, 1984, Morrow, with Michael Harlow, agreed to travel to Florida, procure cocaine, and bring the cocaine to Omaha in exchange for a payment of $10,000 promised by the informant. Harlow and Morrow would equally share the $10,000, a split "down the middle." The informant also expressed his desire for cocaine and marijuana for his personal use. Harlow and Morrow arranged to deliver some cocaine and marijuana to the informant at their meeting the next day, January 15, at a restaurant. At that January 15 meeting, the informant appeared with an undercover officer of the Nebraska State Patrol. Harlow passed some marijuana under the table to the officer. A few minutes later, Morrow gave Harlow the keys to Morrow's car so that Harlow could leave and return with cocaine for delivery to the informant and undercover officer. The informant, undercover officer, and Morrow remained and awaited Harlow's return. After Harlow's return with the cocaine, Harlow and the undercover officer went to the men's room, where Harlow delivered the cocaine to the officer. The undercover officer then arrested Harlow and Morrow. In separate proceedings Morrow and Harlow were charged with delivering controlled substances—marijuana and cocaine.

Delivery of marijuana is a Class III felony and upon conviction is punishable by imprisonment for a term not less than 1 year nor more than 20 years, by a fine not exceeding $25,000, or by both such imprisonment and fine. See Neb. Rev. Stat. §§ 28-416(1)(a) and (2)(b) (Cum. Supp. 1984) and 28-105 (Reissue 1979). Delivery of cocaine is a Class II felony and upon conviction is punishable by imprisonment for a term not less than 1 year nor more than 50 years. See §§ 28-416(1)(a) and (2)(a) (Cum. Supp. 1984) and 28-105 (Reissue 1979).

Morrow was convicted, in a jury trial, on April 6. On April 19 Harlow, pursuant to a plea agreement for dismissal of the marijuana charge, entered a plea of guilty to the cocaine charge. Harlow entered his guilty plea before a judge other than the one who presided at Morrow's trial.

After a presentence report, on July 13 the judge who presided in Morrow's trial sentenced Morrow to concurrent sentences, namely, a term of 1 to 2 years for the marijuana

conviction and $1\frac{1}{2}$ to 3 years for the cocaine conviction. On July 20, 1 week after Morrow was sentenced, another judge sentenced Harlow to probation for a term of 2 years.

Morrow appeals, arguing that (1) there was insufficient evidence to sustain the convictions and (2) the district court abused its discretion in sentencing him.

Morrow argues that his presence at the discussions and delivery of the controlled substances is not sufficient evidence to sustain the convictions. We have stated: " 'Mere presence, acquiescence, or silence, in the absence of a duty to act, is not enough, however reprehensible it may be, to constitute one an accomplice. The knowledge that a crime is being or is about to be committed cannot be said to constitute one an accomplice . . . .' " *Wilson v. State*, 170 Neb. 494, 510, 103 N.W.2d 258, 269 (1960). However, a reading of the record demonstrates that Morrow's involvement went beyond mere presence and passivity.

A person who aids, abets, procures, or causes another to commit any offense may be prosecuted or punished as if he were the principal offender. Neb. Rev. Stat. § 28-206 (Reissue 1979). This court has, on several occasions, defined "aiding and abetting" as follows:

> "Aiding and abetting involves some participation in the criminal act and must be evidenced by some word, act, or deed. No particular acts are necessary; nor is it necessary that any physical part in the commission of the crime is taken or that there was an express agreement therefor. Mere encouragement or assistance is sufficient."

*State v. Thielen*, 216 Neb. 119, 125, 342 N.W.2d 186, 191 (1983).

Morrow actively participated in the conversations and conduct leading to consummation of the crimes. After the agreement to deliver the marijuana and cocaine, Morrow gave his car keys to Harlow so that Harlow could pick up the cocaine. There was sufficient evidence, direct and circumstantial, to sustain the convictions. Therefore, Morrow's first assignment of error has no merit. Morrow's conviction is affirmed.

In his second assignment of error Morrow alleges that the

trial court abused its discretion in sentencing, in view of the different sentences imposed on Harlow and Morrow.

It is clear beyond question that if we disregard the sentence imposed upon Harlow, the sentence imposed upon Morrow is not excessive. It was the near minimum which could be imposed for the crimes committed. An examination of the reports of this court would disclose that a sentence of 1 to 2 years for delivery of marijuana and a concurrent sentence of 1½ to 3 years for delivery of cocaine would be wholly consistent with sentences regularly imposed upon others committing similar crimes. Additionally, Morrow's past record would support the sentence imposed. The presentence report disclosed that he had been confined at the Youth Development Center-Kearney in 1973 for a violation of probation after adjudication in juvenile court for wrongful use of a motorcycle, and was also convicted of robbery in 1975 and sentenced to imprisonment. Morrow's robbery conviction was later set aside in federal court, and Morrow was never retried on the robbery charge. See *Morrow v. Parratt,* 574 F.2d 411 (8th Cir. 1978). Morrow's record also shows several traffic offenses, including "driving while intoxicated" in 1974.

We have regularly and consistently held that absent an abuse of discretion, a sentence imposed within the statutory limits will not be disturbed on appeal. See *State v. McKichan,* 219 Neb. 560, 364 N.W.2d 47 (1985). Further, the granting of probation as opposed to incarceration is a matter left to the sound discretion of the trial court and absent a showing of an abuse of discretion will not be disturbed on appeal. See *State v. Jallen,* 218 Neb. 882, 359 N.W.2d 816 (1984). There is nothing contained within Morrow's records which would support a claim of abuse of discretion.

The question which we must then address is whether a sentence which in itself is not the result of an abuse of discretion may nevertheless entitle the defendant to relief because of a sentence imposed by another judge on a codefendant.

In support of Morrow's position seeking a reduction in his sentence, our attention is directed to *State v. Shonkwiler,* 187 Neb. 747, 194 N.W.2d 172 (1972), and *State v. Nix,* 215 Neb. 410, 338 N.W.2d 782 (1983).

While it is true that language may be found in *Shonkwiler* which would give comfort to Morrow in this case, it is further true that an examination of the facts in *Shonkwiler* makes it clear that it has no application to the instant case. In *Shonkwiler* the evidence established that both defendants pled guilty and were sentenced by the same judge at the same time. The only apparent reason for the disparity in sentence was the fact that Shonkwiler expressed to the probation officer and to the court his belief that the Vietnam war was immoral and stated he would refuse to bear arms in Vietnam. The trial court interpreted his comments as a statement that he would not obey the laws of the United States, referred to him as an outlaw, and refused to entertain any additional testimony as to the nature and extent of his conscientious objections. We correctly held that such factors were not proper to be considered by the trial court, and we modified the sentence. Under the facts in *Shonkwiler* we would have reduced the sentence even if there had been no codefendant. We have no similar facts in the instant case.

*State v. Nix, supra*, presents a more difficult problem. In *Nix* we held at 411, 338 N.W.2d at 783, as we had previously held,

> "where two or more defendants are convicted for the same offense and different penalties are inflicted, and it appears from the evidence that the defendant receiving the least punishment is at least equally guilty, it may be necessary for this court to examine the evidence to determine whether there were justifiable reasons for the distinctions and whether the higher sentence should be reduced."

That is a correct statement of the law; and where two or more defendants are convicted for the same offense and different penalties are inflicted, it is appropriate for the court to *examine* the evidence to determine whether there are justifiable reasons for the differences. In *Nix, supra*, we reduced the sentence even though Nix's sentence was appropriate and the codefendant's inappropriate under all of the facts. On further reflection we believe that we simply misapplied the rule in *Nix*, and given an opportunity to review the matter again would hold to the contrary, as we do in this case.

What we are here presented with is a situation in which

Morrow received an appropriate sentence for the crime while the codefendant, Harlow, sentenced by another judge at another time, received what was obviously an extremely lenient sentence.

In effect, the argument that is presented to us by Morrow is to the effect that if one sentencing judge imposes a more lenient sentence, though a more severe sentence could have been justified, another sentencing judge may not impose any more severe sentence even though the latter sentence is in all respects correct. We do not believe that to be the law, and obviously was not the view of the Legislature when it recently adopted Neb. Rev. Stat. § 29-2320 (Cum. Supp. 1984), which provides:

> Whenever a defendant is found guilty of a felony, following a trial or the entry of a plea of guilty or tendering a plea of nolo contendere, the county attorney charged with the prosecution of such defendant may appeal the sentence imposed to the Supreme Court if such attorney reasonably believes, based on all of the facts and circumstances of the particular case, that the sentence is excessively lenient.

The problem here is not that Morrow's sentence should be reduced but, rather, that the county attorney should have appealed Harlow's sentence because it was too lenient. At best, it is Harlow's sentence which is wrong and not Morrow's.

While it is obvious that every effort should be made to avoid disparity in sentencing, it would be to make mockery of the law to suggest that the way one error is cured is by committing a second error. Where it is apparent that the lesser sentence imposed upon a codefendant is erroneous, the sentencing court is not required to reduce all more severe though properly imposed sentences just to obtain uniformity.

AFFIRMED.

SHANAHAN, J., dissenting.

The majority opinion is replete with rationalization in disposition of Morrow's sentence and fails to address the fundamental problem in the sentencing process, namely, because judges vary, sentences vary. See M. Frankel, Criminal Sentences: Law Without Order 21 (1973).

To place matters in proper perspective, in *Morrow v. Parratt,*

574 F.2d 411 (8th Cir. 1978), the federal court found Morrow's conviction was constitutionally defective, set aside that conviction, and ordered the State to retry Morrow, which the State declined to do. Consequently, the backgrounds for Morrow and his companion in crime, Harlow, have no appreciable differences and are so strikingly similar as to be indistinguishable.

As early as 1905 this court recognized that fundamental fairness requires parity in sentencing codefendants equally culpable in the commission of the same crime, and held in *Keeler v. State*, 73 Neb. 441, 103 N.W. 64 (1905):

> When two or more defendants are tried together for the same offense, and different penalties are inflicted, and it appears from the evidence that the defendant receiving the least punishment is at least equally guilty, it may become necessary for this court to determine from the evidence, as an original question, whether the punishment of the defendants or some of them should be reduced.

(Syllabus of the court.)

This court has been given authority to modify an excessive sentence and impose the sentence warranted under the circumstances. See Neb. Rev. Stat. § 29-2308 (Cum. Supp. 1984).

In *State v. Shonkwiler*, 187 Neb. 747, 751, 194 N.W.2d 172, 174 (1972), this court stated: "The law still continues to strive for even-handed justice."

More recently, in an attempt to achieve equality in sentencing codefendants, this court required a district court to "set forth its reasons for differing dispositions" regarding dissimilar sentences of codefendants. *State v. Javins*, 199 Neb. 38, 41, 255 N.W.2d 872, 874 (1977).

To avoid a "substantial miscarriage of justice" involving different sentences imposed on codefendants, in *State v. Komor*, 213 Neb. 376, 329 N.W.2d 120 (1983), this court modified a sentence of imprisonment imposed on one defendant, ordered probation in accordance with the sentence imposed on a codefendant, and noted: "Anything other than that would constitute an impermissible disparity of sentences for identical offenses." *Id*. at 378, 329 N.W.2d at 122.

Although seals of other states may not bear "EQUALITY BEFORE THE LAW," as inscribed on the Great Seal of the State of Nebraska, nevertheless courts of other jurisdictions have justifiably taken pride in their respective systems of criminal justice which strive for equality before the law through a system wherein codefendants, with similar backgrounds and equally guilty in the commission of a crime, are treated and punished the same. See, *Troyer v. State*, 614 P.2d 313 (Alaska 1980); *Demps v. State*, 395 So. 2d 501 (Fla. 1981); *People v. Bell*, 95 Ill. App. 3d 803, 420 N.E.2d 497 (1981); *Com. v. McQuaid*, 273 Pa. Super. 600, 417 A.2d 1210 (1980); *Cox v. State*, 491 P.2d 357 (Okla. Crim. 1971). Thus, other courts, in attempting to avoid disparate sentences of codefendants convicted of the same crime, have applied legal logic consistent with common sense—identical facts result in identical consequences.

As Professor Jack M. Kress expressed: "Justice demands, however, that two individuals convicted of the same offense, with similar backgrounds and criminal histories, should receive sentences that are roughly the same." J. Kress, Prescription For Justice 20 (1980). As further noted by Professor Kress, disparity in sentences will "lead the public to lose confidence in the fair and impartial administration of the criminal justice system." *Id*.

Concerning unexplained and unjustifiable variations in sentences, Judge Marvin E. Frankel has observed: "The crazy quilt of disparities—the wide differences in treatment of defendants whose situations and crimes look similar and whose divergent sentences are unaccounted for—stirs doubts as to whether the guarantee of the 'equal protection of the laws' is being fulfilled." Frankel, *supra* at 103.

There is an axiom, "Things equal to the same thing are equal to each other." As illustrated by the majority's opinion, that Euclidean axiom is restricted to geometry and has no value for determining the measurement, properties, or relationship of a sentencing process in reference to a system of criminal justice. In view of the newly fashioned rule enthusiastically embraced by the majority, absence of equality in sentencing codefendants results in disappointment exceeded by a greater disappointment

that the law no longer strives for "even-handed justice" in the sentencing process and further exceeded by the greatest disappointment that the law now treats equals unequally.

Under the circumstances Morrow's sentence is excessive. This court should have modified Morrow's sentence to probation, the sentence imposed on Morrow's equally culpable codefendant. It is inequitable that Morrow receive a sentence greater than the sentence imposed on Harlow for the same crime. Morrow should pay for his crime, not for the imperfections of our sentencing process.