STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION,
RELATOR, V. FRANK ROUBICEK, RESPONDENT.

406 N.W.2d 644

Filed May 29, 1987.    No. 86-143.

Alison L. Larson, Assistant Counsel for Discipline, for relator.

Paul E. Galter of Bauer, Galter & O'Brien, for respondent.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This is an original proceeding in this court where the Nebraska State Bar Association, as relator, has filed amended formal charges against Frank Roubicek, respondent, who was admitted to the practice of law in this state on June 25, 1954.

The amended formal charges allege that on May 8, 1981, respondent filed an "Inheritance Tax Worksheet, Voluntary

Appearance and Waiver of Notice" in the estate of Loyd West in the county court for Knox County and that the worksheet was signed by respondent and the county attorney for Knox County. The charges further allege that the worksheet showed that the inheritance tax due Knox County was $48,375, but that the amount of the inheritance tax, if properly computed, would not have been more than $9,900. The charges then allege that at the time of the proceedings in the West estate, pursuant to Neb. Rev. Stat. §§ 77-2101.01 et seq. (Reissue 1981), the estate tax due to the State of Nebraska was the amount by which the maximum credit allowance deduction for state death taxes from the federal estate tax filed in connection with the West estate exceeded the Nebraska inheritance tax due; that the maximum credit in the West estate was $48,375; and that by showing all of that sum due as inheritance tax due Knox County, the liability for Nebraska estate tax was eliminated.

The charges then allege that on June 4, 1981, respondent, as attorney for the personal representative of the estate, filed a Nebraska estate tax return showing no Nebraska estate tax due; that on June 16, 1981, the county court for Knox County entered a "Formal Order for Complete Settlement after Informal Testate Proceedings," which order approved the inheritance tax in the amount of $48,375, to be paid to Knox County; that the county court in making the inheritance tax determination relied upon the inheritance tax worksheet executed by the respondent, as attorney for the personal representative of the estate, and the county attorney for Knox County; that the attorneys signed the inheritance tax worksheet with the expectation that the county court would approve and assess the inheritance tax shown thereon; and that the worksheet was executed and submitted with the purpose of increasing the inheritance tax payable to Knox County at the expense of the estate tax payable to the State of Nebraska.

Relator further alleges in the amended charges:

That the actions of the Respondent, as set forth above, constitute a violation of his Oath of Office, as an attorney licensed to practice law in the State of Nebraska, as provided by Section 7-104 R.R.S. 1977, and a violation of the following provisions of the Code of Professional

Responsibility, to-wit:

DR 1-102 Misconduct.

(A) A lawyer shall not:

1. Violate a Disciplinary Rule.

5. Engage in conduct that is prejudicial to the administration of justice.

That attorney's oath requires, as it did in 1954 when respondent was admitted to the bar, that every attorney shall take an oath in the following form: "You do solemnly swear that you will support the Constitution of the United States, and the Constitution of this state, and that you will faithfully discharge the duties of an attorney and counselor, according to the best of your ability."

Respondent answered the amended charges, admitting the preparation of the worksheet as described, generally denying the other allegations, and requesting that the charges be dismissed.

A hearing was held before a referee appointed by this court. At the conclusion of that hearing, the referee determined that the allegations in the amended formal charges were proved by a clear preponderance of the evidence by the relator, and that respondent's actions "constituted a violation of his oath of office, as an attorney . . . and that his actions constitute a violation of DR1-102 (A)(1) and (5) of the Code of Professional Responsibility." For the reasons later discussed herein, the referee recommended that respondent be placed on probation rather than disbarred or suspended from the practice of law.

Relator filed exceptions to the recommendations of the referee as to sanctions to be imposed, but did not except as to the referee's findings of fact. Respondent filed exceptions to the findings of the referee and specifically excepted to the findings that respondent's actions violated DR 1-102(A)(1) and (5) of the Code of Professional Responsibility. Respondent's further position was that if this court "concludes that such violations occurred, the Respondent does not except to the Referee's recommendation of sanctions to be imposed."

For the reasons set out hereinafter, we determine that the findings of fact and conclusions of law are correct, but that the sanction recommended to be imposed was inadequate.

Initially, we observe that in disciplinary proceedings such as the case at bar, the Supreme Court reviews the evidence de novo on the record to determine if discipline of a lawyer should be imposed and, if it should, the extent of the sanction. *State ex rel. Nebraska State Bar Assn. v. McArthur*, 212 Neb. 815, 326 N.W.2d 173 (1982); *State ex rel. Nebraska State Bar Assn. v. Michaelis*, 210 Neb. 545, 316 N.W.2d 46 (1982).

As a general factual background, we agree with the statements of the referee, as both relator and respondent apparently do also.

The referee's report sets out the following:

This matter generally arises out of allegations of wrongdoing by Mr. Roubicek concerning probate matters which he handled. Specifically, the alleged wrongdoing has to do with the manner in which Mr. Roubicek prepared and submitted state inheritance tax worksheets. . . . In estates which are substantial, both a Federal Estate Tax Return and a State Estate Tax Return are required to be filed. The Federal Estate Tax Return is due nine months after death and the State Estate Tax Return is due 12 months after death. Accordingly the Federal Estate Tax Return is filed first. On the Federal Return, the estate is entitled to a credit for State Death Taxes. This is commonly referred to as the State Death Tax Credit and the amount of the credit is simply derived from a chart as determined by the federal government. After the Federal Estate Tax Return is filed and the State Death Tax Credit determined, the State Estate Tax Return is prepared and filed. The preparer first determines the amount of inheritance tax due. The inheritance tax is that tax which is assessed against persons who inherit from the estate and that tax is paid to County government. There is a prescribed form which embodies the statutory law in the State of Nebraska to assist the preparer in determining the amount of the inheritance tax to be paid. After the inheritance tax is figured, if the inheritance tax is less than the State Death Tax Credit as derived from the federal return, the balance goes to the State of Nebraska as a State Estate Tax.

When the person preparing the inheritance tax worksheet has completed same, he submits same to the local county attorney who either gives his approval or rejection. If rejected, usually because of an argument over values placed on listed inventory, the matter is either negotiated until a settlement is reached or the matter is submitted to the County Court for a hearing to determine the disputed issues. If the County Attorney and the preparer of the inheritance tax worksheet are in agreement, they so indicate on the worksheet, submit same to the County Judge for his approval. It is the County Judge who ultimately determines the amount of the inheritance tax. As a matter of practical fact, the local County Judge will nearly always approve the worksheet once it has been agreed to by both the preparer of the inheritance tax worksheet and the County Attorney.

As stated above, the estate in which respondent's specific wrongdoing is alleged was the Loyd West estate. West died on September 7, 1980. Application for informal probate of his will was filed in the Knox County Court by respondent on September 17, 1980. This application states that the heirs and devisees of West who were to take under his will were his widow and four children and that there were no other "interested parties" in the estate. On May 8, 1981, respondent filed an inheritance tax worksheet, voluntary appearance, and waiver of notice. The worksheet, which was signed by respondent as attorney for the personal representative and by the county attorney for Knox County showed a gross estate of $2,319,355; no allowances for exempt property; no deductions for funeral expenses, attorney fees, court costs, or any other items; and "[s]uccession interest deduction" of $1,069,744. The worksheet then states that the "[t]otal gross estate (Federal Estate Tax Return, Form 706)" and "[n]et estate" were the same amount of $2,319,355 and that the "[t]otal deductions and exemptions" were $1,069,744, resulting in a "[n]et value of estate subject to Nebraska Inheritance tax" of $1,249,611. The second page of the worksheet, consisting of 13 numbered lines, with many additional lines for requested information, is not filled in, with the exception of three identical dollar amounts: the "Nebraska

inheritance tax balance due" of $48,375; the "Nebraska Inheritance Tax Apportionment," showing the balance due to Knox County of $48,375; and balance due of $48,375. In answer to the information sought on line 45, which states, "Complete the name, relationship, class, value, exemption, taxable amount and tax due for each recipient," respondent filled in only the words, "As per material filed."

Other evidence in the record shows that the county attorney for Knox County believed that the phrase "as per material filed" "referred to the inventory that was in the West Estate, at least to the inventory." The specific "material filed" is not explained by respondent. The inventory filed showed "Total Value at Date of Death" as $2,319,355. No amended inventory was ever filed in the estate, as required by Neb. Rev. Stat. § 30-2469 (Reissue 1985).

Neb. Rev. Stat. § 77-2004 (Reissue 1981), in effect at the time of Loyd West's death, provided that heirs or devisees of the degree of kindred of those receiving the entire West estate (that is, his widow and children), in calculating the inheritance tax they must pay, were entitled to an exemption of $10,000, with the remainder of the inheritance taxed at 1 percent.

This worksheet was submitted to the county judge for Knox County. Three county judges acted as county judge for the counties of Knox, Antelope, Pierce, Madison, Wayne, Stanton, and Cuming. One of the judges ordinarily came to Knox County on a rotating basis not shown in the record. Inheritance tax in the amount of $48,375 was paid to the Knox County treasurer on June 2, 1981.

On June 4, 1981, a Nebraska estate tax return for the Loyd West estate was filed. This return was signed by respondent after a line on the return stating, "Under penalties of perjury, I declare that I have examined this return, and to the best of my knowledge and belief, it is correct and complete." This return requests information as to eight dollar figures. The return states that the "[t]axable estate (line 3, page 1, Federal Form 706)" is $1,249,611; that the "[g]ross Nebraska estate tax (credit for state death taxes [line 13, page 1, Federal Form 706])" is $48,375; that the inheritance tax paid was $48,375; and that the "[n]et Nebraska estate tax due," the estate tax previously paid

to Nebraska, the "TAX DUE," the interest per year, and the "BALANCE DUE" are $0. A "Formal Order for Complete Settlement" was issued by the county judge on June 16, 1981.

The circumstances leading to the state's discovery of this transaction are set out below. With regard to the West estate transactions, the record shows that on November 4, 1983, the Nebraska Tax Commissioner, through the office of the Attorney General of Nebraska, filed a petition in the county court for Knox County to vacate the order approving the inheritance tax determined in the West estate and requesting redetermination of those taxes. After lengthy hearings in the county court, the court ordered that the 1981 inheritance tax determination be set aside and that a redetermination of inheritance tax and Nebraska estate tax be made. This ruling was appealed to the district court for Knox County, where the county court order was affirmed. That affirmance was appealed to this court, where the case is now pending.

We note that our Neb. Ct. R. of Disc. 20 (rev. 1986) provides for the situation presented in these proceedings. That rule provides:

(A) Similarity of the substance of a complaint, Charge or Formal Charge to the material allegations of pending criminal or civil litigation shall not in itself prevent or delay disciplinary proceedings against the member involved in such litigation.

(B) The acquittal of the member on criminal charges, or a verdict or judgment in his favor in civil litigation involving material allegations similar in substance to a complaint, Charge or Formal Charge shall not in and of itself justify termination of disciplinary proceedings predicated upon the same or substantially the same material allegations.

Accordingly, we have proceeded with disposition of the charges against respondent without waiting for the ultimate disposition of the civil case involving the Loyd West estate.

The manner in which the West estate inheritance tax questions came to light sheds great light on the whole question of respondent's alleged wrongdoing. The record before the referee shows that on July 25, 1983, respondent, who was the

attorney for the personal representative of the Verna J. Rice estate, which was being probated in Knox County, wrote to the county attorney for Knox County, Steven Scholer, and county attorney for Antelope County, Alan Brodbeck, with a proposal for distribution of inheritance tax of the Rice estate. Respondent's letter stated:

Enclosed please find:

1. Copy of inventory.

2. Copy of appraisal.

3. Copy of facing sheet and page 2 of federal estate tax return.

4. Original and copy of state inheritance tax worksheet for each of you.

5. Copy of letter from Colorado attorney, Samuel L. Andersen.

Here's how it works out:

| | |
|---|---|
| Net total property | $2,509,686.00 |
| Colorado land | - 55,000.00 |
| Federal estate tax | - 828,559.00 |
| Net Nebraska property | $1,626,127.00 |
| Heirs (1 son, 6 grandchildren) | - 70,000.00 |
| Taxable property | $1,556,127.00 |
| | x 1% |
| Nebraska tax to divide up between Antelope & Knox | $ 15,561.00 |

However, federal credit is $139,575.00, so rather than pay difference into the state on a State Estate tax return, I propose tax as follows:

| | |
|---|---|
| Credit | $139,575.00 |
| Colorado share | - 2,998.07 |
| Net for Nebraska | $136,576.93 |

Total state inheritance tax =  $136,576.93

Division:

Knox $\frac{2,381,725}{2,560,225}$ of $136,576.93 = $127,054.73

Antelope $\frac{178,500}{2,560,225}$ of $136,576.93 = $ 9,522.20

State estate tax = 0

If you agree, please execute and return to me the enclosed waiver and agreement.

The county attorney for Antelope County testified that when he received the July 25, 1983, letter and the inheritance tax worksheet for the Rice estate from respondent, he determined not to sign the worksheet.

After the original calculation submitted by respondent, additional property belonging to the estate was discovered. By letter dated July 28, 1983, respondent informed the two county attorneys of the increase and suggested a division of inheritance tax of $133,016.21 to Knox County and $9,659.72 for Antelope County, based on a state death tax credit of $145,674. The then county attorney for Antelope County, Alan Brodbeck, testified, "I couldn't sign the inheritance tax worksheet as it was presented to me because I didn't believe that the inheritance taxes were being determined properly." Brodbeck testified that he

> looked at the computation, the manner in which would be the statutory level, the requirements, and determined that there was too much inheritance tax being paid to both of the counties, Antelope and Knox County, and that it was in excess of what the statute would prescribe for the inheritance tax.

Brodbeck further testified that respondent called him in August of 1983 to ask why Brodbeck had not returned the inheritance tax worksheet on the Rice estate. Brodbeck told respondent that he did not think the worksheet had been properly done and that he did not intend to sign it. Brodbeck testified that respondent indicated that "the problem with this was that it was being done by a stipulation rather than by figures presented by the statute prescribed that it be determined. . . . [H]e [respondent] said that this was done all the time this way." Brodbeck testified that when he told respondent that he would not sign the worksheet, respondent asked him "if the supervisors in Antelope County, what they would think of me turning down approximately $8,000 in inheritance taxes. And he then said if Antelope didn't want the money that Knox County could have it . . . ."

By letter dated August 2, 1983, with a copy to the county attorney for Knox County, Brodbeck rejected respondent's proposal and recalculated Antelope County's share of the

inheritance tax to be $1,153.33, based on the tax rates under the inheritance tax statute.

Further evidence shows that after Brodbeck's refusal to go along with respondent's original computation, respondent prepared a new inheritance tax worksheet, showing the inheritance tax due Knox County to be $141,522.60 and the amount due Antelope County to be $1,153.33 (the amount calculated by Brodbeck), for a total of $142,675.93, which is the exact difference between the $145,674 state death tax credit and the inheritance tax of $2,998.07 paid to the State of Colorado. This worksheet was signed by respondent and the county attorney for Knox County, Scholer, who entered his voluntary appearance on behalf of the county and state, waived notice, and acknowledged that he had examined the foregoing worksheet and had no objections thereto for inheritance tax purposes only. A receipt dated October 26, 1983, from the Knox County treasurer, shows that in the Rice estate $141,522.50 had been paid in and the "[a]mount refunded 126,515.60" and "[b]alance in fund 15,007.00."

Sometime after refusing to sign the last worksheet, Brodbeck called County Judge Philip Riley, who was the presiding judge in Knox County, and advised him that the inheritance tax was not being properly determined in the Rice estate. Judge Riley notified the Nebraska Attorney General of the situation.

On September 14, 1983, a hearing was conducted by Judge Riley for a determination of inheritance tax in the Verna Rice estate. On October 19, 1983, Judge Riley determined that the "inheritance tax due to the State of Nebraska by reason of the death of Verna J. Rice is the sum of $16,121.00, which tax should be apportioned as follows: Knox County, $15,007.00 and Antelope County $1,114.00 . . . ." The amount apportioned to each county was paid to the respective counties, and the record shows that on November 4, 1983, the Nebraska estate tax in the amount of $126,554.93 was paid. The personal representative in the Rice estate was discharged on December 17, 1984.

Further evidence adduced before the referee showed that in four other estates, in addition to the West and Rice estates, respondent had arranged for the payment of the exact amount

of the state death tax credit as the inheritance tax due in each of the estates. In addition, apparently to show that respondent did know how to properly compute inheritance taxes due various counties and a concurrent Nebraska estate tax, evidence as to three other estates probated by respondent was submitted, and in these estates respondent apparently accurately differentiated between inheritance taxes due and estate taxes due and showed that no estate tax was due.

Respondent, in his exceptions to the report of the referee, has excepted specifically only to the conclusion of the referee that respondent's actions violated the disciplinary rules of this court. He does not specify any objection to the referee's findings of fact. The respondent states in the conclusion to his brief at 18 that "[t]he allegations . . . are not supported by the evidence."

In disciplinary proceedings, the charges must be established by clear and convincing evidence. That standard of proof has been sometimes referred to as " 'a clear preponderance of the evidence . . . .' " See *State ex rel. NSBA v. Kelly*, 221 Neb. 8, 12, 374 N.W.2d 833, 836 (1985). The two phrases set out the same standard. For the sake of uniformity and clarity, the rule as to the burden of proof in disciplinary proceedings shall hereafter be by clear and convincing evidence, which is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. Clear and convincing evidence means more than a preponderance but less than evidence beyond a reasonable doubt. See *Castellano v. Bitkower*, 216 Neb. 806, 346 N.W.2d 249 (1984). In our de novo review, we determine that the factual findings of the referee are correct and are supported by clear and convincing evidence.

Respondent's legal arguments will be addressed as set forth in the "propositions of law" set out in his brief. In respondent's first legal proposition addressed, he asserts that because the formal charges against him involve only the West estate, and because respondent admitted his actions were intentional in that estate, evidence from other estates should not have been received into evidence, or should have been received only to show intent, motive, or a common scheme or plan.

Our examination of the record discloses that the bulk of the

evidence concerning the other estates was in the form of exhibits which were offered and received into evidence without objection. A party on appeal may not assign the admission of evidence as error where no objection was made thereto in the trial. *PWA Farms v. North Platte State Bank*, 220 Neb. 516, 371 N.W.2d 102 (1985). Neither may a party except to the admission of evidence in a disciplinary proceeding where no objection was made before the referee.

Aside from that disposition of the point, we note that the evidence from the other estates in which respondent improperly filed an inheritance tax worksheet is admissible under Neb. Evid. R. 404(2), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Neb. Rev. Stat. § 27-404(2) (Reissue 1985). The evidence from these estates showed a pattern of behavior on the part of respondent which served as proof not only of his intent to avoid payment of state estate tax in violation of § 77-2101.01 but as proof of a plan to avoid state estate tax and as proof of the absence of mistake on respondent's part in preparation of the inheritance tax form in the West estate. Evidence as to other estates handled by respondent was properly received by the referee.

Respondent next contends that inheritance tax determinations are adversary proceedings in which the county attorney has the responsibility of representing the state and in which the county court has the final responsibility of determining the amount of inheritance tax.

In support of this argument, respondent cites the pertinent Nebraska statutes, Neb. Rev. Stat. §§ 77-2018.01 to 77-2023 (Reissue 1986), which set out the procedures for determining the amount of inheritance tax.

Section 77-2018.03 provides in part:

> In all matters involving the determination of inheritance tax, notice served upon the county attorney

shall constitute notice to the county and the State of Nebraska. It shall be the duty of the county attorney to represent the county and the State of Nebraska in such matters as its attorney.

Section 77-2018.05 provides in part:

[T]he court shall have the authority, upon the written application of any of the parties . . . to determine a final inheritance tax on any property devised, bequeathed, or otherwise transferred, based upon the probabilities at the time of the decedent's death rather than taxing the property at the rates specified in such sections.

Respondent asserts in his brief at 13 that "the ultimate responsibility for determining the amount of inheritance tax rests with the court" and contends that even if a stipulation is submitted to the court by the county attorney and the attorney for the personal representative, the county judge is not bound to accept such stipulation. Respondent suggests that because both the county attorney and county judge involved in an inheritance tax proceeding have statutory responsibilities in the determination of the tax, and since respondent did not represent either the county or the state, respondent therefore had no duty to inform the court that the inheritance tax worksheet was not prepared pursuant to §§ 77-2101.01 et seq.

The basis of such an argument has to be that respondent, as an attorney, has no responsibility to fully and truthfully inform the court as to the facts on which the respondent has requested the court to act. To state such a proposition is to show its obvious error. An attorney before a court violates his oath as an attorney if he willfully conceals or misrepresents facts or law material to the court's decision.

In *State ex rel. Nebraska State Bar Assn. v. McArthur*, 212 Neb. 815, 819, 326 N.W.2d 173, 175 (1982), we stated:

There can be no question that concealing material facts from a probate court and presenting a report known by respondent to be less than a true, accurate, and full accounting of the proceeds which came into his client's possession on behalf of the estate served to demean that court of justice and its judicial officer, impeded and obstructed the administration of justice, and brought

discredit to respondent, the profession, and the courts.

In the worksheet presented to the county court in the West estate, respondent stated that the net value of the estate "subject to Nebraska Inheritance tax" was $1,249,611 and that the Nebraska inheritance tax due was $48,375. Respondent stated his computation was made "As per material filed." Respondent knew the individuals inheriting in the Rice estate had the obligation under Nebraska law to pay $15,561 as inheritance taxes. Respondent so stated in his private letter of July 25, 1983, to the county attorneys for Knox and Antelope Counties. Nonetheless, respondent formally informed the county court that the inheritance tax due was $141,522.60. To put the matter simply, respondent lied to the county court.

Respondent takes the position that because the county attorney for Knox County who preceded Scholer was willing to let him lie, and because the county judge, in the press of his many duties, did not catch his lie, the fault lies with others and not with respondent.

Such a position is taken by respondent in spite of his oath that he "will faithfully discharge the duties of an attorney," and in spite of the fact that the disciplinary rules of the attorney's profession require that he "shall not . . . [e]ngage in conduct that is prejudicial to the administration of justice." DR 1-102(A)(5).

Respondent seeks to avoid any personal responsibility for his actions. The refusal to accept personal responsibility has been the source of much grief in the world in the last 50 years. In the field of the law, with the burgeoning number of cases in all courts, if courts cannot rely on the truthfulness of attorneys practicing before the courts, our system of justice will not be able to function efficiently or effectively.

Respondent's contentions that other members of the legal profession have an overriding duty not to let respondent attempt to circumvent the law and that he has no affirmative duty to observe the law are without merit.

Respondent then puts forward the proposition of law that, as stated in the index to his brief, "Within the bounds of law, a lawyer has a duty to represent the best interests of his client." We wholeheartedly agree with that statement of the law. The

problem with respondent's position in these proceedings is that, as set out above, respondent has not acted "[w]ithin the bounds of law."

The evidence fully supports the referee's finding "that the conduct engaged in by Mr. Roubicek in the Lloyd [sic] West Estate matter constitutes wrongdoing." The referee also found that respondent's intent in so acting "may have been . . . to divert money to the local county or counties, money that should rightfully have been paid to the State of Nebraska." In our de novo review, we find that respondent's intent was to wrongfully divert moneys from the State of Nebraska. We further agree with the referee's findings that respondent "knowingly took advantage of a situation wherein to a certain extent he could 'control' or count on the cooperation of the County Attorneys that he was dealing with and rely upon the trust of the County Judge."

We agree with the referee

> that the actions of the respondent, Frank Roubicek, have in fact constituted a violation of his oath of office, as an attorney licensed to practice law in the State of Nebraska as provided by §7-104 R.R.S. 1943, as amended, and that his actions constitute a violation of DR1-102(A)(1) and (5) of the Code of Professional Responsibility.

The remaining point to be discussed is the appropriateness of the sanction recommended by the referee. The referee recommended that respondent be placed on probation, in lieu of suspension or disbarment. Respondent has stated that if this court determines him to be subject to discipline, he is willing to accept such probation. The relator excepts to the referee's recommendation as to the sanction.

The reasons for the referee's recommendation are set out in his report. The referee stated that respondent's motives for his actions in the West estate were the same as the motives of the county attorney for Knox County at the time, that is, he wanted "to get as much inheritance tax as [he] easily could for the county at the expense of the state."

The referee concluded that it was "very hard" to distinguish the conduct of the county attorney from the conduct of respondent, and noted that the county attorney had received

only a private reprimand from the Committee on Inquiry for the Third Disciplinary District, and no formal charges were filed against him. In view of that situation, the referee felt it was appropriate to place respondent on probation rather than more severe sanctions. The referee also noted that respondent testified that he believed the Nebraska estate tax law to be unconstitutional and that he could therefore circumvent it.

With regard to the question of the unconstitutionality of the law, we note only that respondent has no standing to raise the constitutionality of the law in these proceedings. That consideration is irrelevant to determine the nature of respondent's actions in this matter.

With regard to the referee's concern that respondent should not be treated more severely than the county attorney for Knox County in the West estate, we note our decision in *State v. Morrow*, 220 Neb. 247, 369 N.W.2d 89 (1985). That case involved a criminal appeal from a sentence which appellant contended was too harsh because a codefendant had received a lesser sentence. In the *Morrow* case we stated at 252, 369 N.W.2d at 92: "Where it is apparent that the lesser sentence imposed upon a codefendant is erroneous, the sentencing court is not required to reduce all more severe though properly imposed sentences just to obtain uniformity." In that case we held that the lengthier sentence was not too severe but that the lighter sentence was too lenient.

While disciplinary proceedings are not criminal in nature, the same concept must be considered. Proceedings involving the county attorney for Knox County were not presented to this court. In our efforts to preserve the high standards of the practice of law in this state, we cannot allow our judgments to be controlled by local decisions in similar matters. In disciplinary proceedings, the extent of the sanction imposed by this court upon an offending lawyer cannot be controlled by the sanction imposed upon an equally offending lawyer in the same case in a local proceeding before a committee on inquiry.

We are here faced with a conscious violation of this state's laws by a practicing lawyer. When confronted with the allegations of his misconduct, respondent, in an intemperate written response to the Counsel for Discipline, attacked the

assistant attorney general who was requested by the county judge to investigate the matter, and the tax attorney representing the state Tax Commissioner. In his testimony before the referee, respondent intimated that the county judge in the West estate was biased. As has been discussed, when the county attorney for Antelope County refused to sign the proposed inheritance tax hearing waiver, respondent intimated political reprisal against him. Respondent has never suggested that he has been at all at fault in this protracted matter. There has been no showing by respondent that he contemplates acting at any time in an appropriate manner in practicing law.

As stated in *State ex rel. Nebraska State Bar Assn. v. McArthur*, 212 Neb. 815, 819, 326 N.W.2d 173, 175-76 (1982):

> To determine whether and to what extent discipline should be imposed, it is necessary that we consider the nature of the offense, the need for deterring others, the maintenance of the reputation of the bar as a whole, the protection of the public, the attitude of the offender generally, and his present or future fitness to continue in the practice of law.

Since respondent's actions have not been shown to have benefited him financially, we feel disbarment is not appropriate. Suspension from the practice of law is more responsive to the respondent's wrongful actions.

Accordingly, respondent is suspended from the practice of law for a period of 2 years, beginning June 15, 1987.

JUDGMENT OF SUSPENSION.