ERNEST S. KENNISON v. STATE OF NEBRASKA.

FILED FEBRUARY 6, 1909.    No. 15,718.

1. **Criminal Law: VENUE: WAIVER.** The constitutional right to a trial before a jury of the county where the crime is alleged to have been committed is a mere personal privilege of the accused which he will waive, if the venue is changed at his request, without objection, and he appears without protest, and goes to trial and for the first time objects in the supreme court, although the venue is not changed to an adjoining county. *State v. Crinklaw*, 40 Neb. 759.

2. ———: **REVIEW: PRESUMPTIONS: SELECTING JURY.** Error is not presumed, and this court will not reverse a conviction because of alleged error in overruling challenges to jurors for cause, and because it is claimed that defendant exhausted his peremptory challenges on jurors who should have been excused for cause, where the record does not affirmatively support such assignment. *Shumway v. State*, 82 Neb. 165.

3. **Homicide: INSTRUCTIONS.** K., after a fist fight with C., drew a revolver and fired twice at his antagonist, who grappled with him, and during the struggle the weapon while in K.'s hand was discharged and C. mortally wounded. The court fully instructed the jury concerning all of the degrees of homicide and the subject of self-defense. *Held,* That, if K. did not act in self-defense but

purposely and unlawfully in presenting his firearm and shooting at C., the last shot would refer back to the purpose with which K. commenced to shoot, and that he was not entitled to an instruction on the theory that the killing was accidental.

4. ———: ———: Instructions criticised by defendant examined, and *held* to present the law of self-defense to the jury.

5. ———: MISCONDUCT OF ATTORNEY. Alleged misconduct of an assistant prosecuting attorney *held* not to have been prejudicially erroneous to defendant.

6. ———: TRIAL. It is the province of the district court to regulate the course of business during the progress of trials, and, during the term, to control its own sittings, and an order made compelling counsel for defendant in a criminal case to argue said cause at night, unless it clearly and unmistakably appears that defendant was prejudiced thereby, will not entitle defendant to a new trial.

7. ———: NEW TRIAL: LIMITATION OF ARGUMENT. An order of the court limiting counsel for the state and defense in a murder trial to two hours and fifteen minutes on a side within which to present their arguments will not justify this court granting a new trial, and especially where the record does not disclose that at the end of the time limited counsel requested an extension of time.

8. ———: ———: REPROOF OF COUNSEL. It is the duty of counsel to obey the instructions of the trial court to not interrupt opposing counsel while he is propounding questions to a witness, and, if counsel is contumacious, the court may, with propriety, threaten to discipline him, and such fact will not so impede the course of justice as to entitle defendant to a new trial.

ERROR to the district court for Kimball county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Hamer & Hamer*, for plaintiff in error.

*William T. Thompson, Attorney General*, and *Grant G. Martin, contra.*

ROOT, J.

Defendant appeals from a sentence of 23 years at hard labor in the state penitentiary upon a conviction of murder in the second degree. This is a second appeal, a former conviction having been reversed. 80 Neb. 688.

1. Defendant asserts that the district court for Kimball county did not acquire jurisdiction to try him, because it does not join any part of Scott's Bluff county, where the crime is alleged to have been committed. After reversal, on defendant's application, a change of venue was granted. The transcript discloses that defendant made a written application for a change "to some adjoining county," and the court ordered: "It is directed and ordered upon the request of the defendant that the venue thereof (of the case) and the place of trial be and the same is hereby changed to the county of Kimball." The attorney general asserts that this record establishes that defendant is responsible for said order and all tnat it contains, whereas defendant contends that he asked merely for a change to an adjoining county. The transcript discloses that two entries were made the same day in said case in Scott's Bluff county. One recites the making of the order for a change of venue merely, and the other that it was made at defendant's request. Defendant presents the record as a true one, and we shall treat the latter order as correct. Defendant did not object to the entry or take any exception thereto. He has not preserved the evidence upon which it was made, nor did he challenge the jurisdiction of the district court for Kimball county to try him. In fact, except as he raises the point in his brief, the record is silent as to any objection on his part concerning the change of venue. In *State v. Crinklaw*, 40 Neb. 759, we held that the constitutional right to a trial before a jury of the county where the crime was committed is a mere personal privilege of the accused which he would waive by applying for a change of venue. Defendant ought not to complain of that to which he not only consented but actually procured. Nor does the fact that the waiver applies to a constitutional right lessen its force or application. 1 Bishop, New Criminal Law, secs. 995, 996; 1 Bishop, New Criminal Procedure, sec. 50; *Kent v. State,* 64 Ark. 247; *State v. Hoffmann,* 75 Mo. App. 380; *Weyrich v. People,* 89 Ill. 90; *Lightfoot v. Commonwealth,* 80 Ky. 516; *Perteet*

*v. People,* 70 Ill. 171; *Krebs v. State,* 8 Tex. App. 1; *State v. Kent,* 5 N. Dak. 516. The district court for Kimball county had jurisdiction to try defendant.

2. It is argued in the brief that the court erred in overruling defendant's challenges for cause to the veniremen Bobbit and Brown. Neither of those gentlemen formed part of the jury that tried defendant, nor does the record affirmatively disclose that he employed any of his peremptory challenges to exclude them therefrom. For all the record advises us, they may have been excused on the peremptory challenge of the state or by agreement of the parties. Error will not be presumed, and defendant's said assignment of error is not well taken.

3. Defendant requested and the court refused the following instructions:

"1. If you find that the revolver was accidentally discharged at the time the last shot was fired, neither the deceased nor the defendant having complete control of the revolver, but both struggling for the possession of it, or if you have a reasonable doubt whether it was not so discharged, you cannot find the defendant guilty of murder in the first or second degree.

"2. Before you can find the defendant guilty of murder in the first degree or murder in the second degree, you must find that he intended to cause the death of the deceased and that he purposely discharged the revolver at the time the last shot was fired. If the discharge of the revolver at that time was accidental or you have a reasonable doubt whether it was not accidental, you should acquit the defendant of murder in the first and second degree."

Counsel assert that there was sufficient evidence tending to support their theory of an accidental discharge of the revolver to entitle them to these instructions. The court had with commendable clearness instructed the jurors as to the various degrees of homicide, and that the burden was on the state to prove the elements essential to constitute murder in the first or second degree or manslaughter,

as the case might be, and that defendant was not guilty of murder in the second degree unless he maliciously and purposely killed the deceased. It had also given defendant the benefit of the defense of intoxication and of self-defense. The testimony tends to prove that defendant for some weeks preceding the tragedy had entertained the thought of beating Mr. Cox, the deceased; that on one occasion he had challenged him to fight in the street, and Cox had refused; that he frequently referred to deceased in vile language; that on the afternoon of the 29th, the day the crime was committed, defendant stated that Cox had to take a whipping, that there was no way out of it; and that a short time before the encounter defendant had stated that he would whip the first man he met that afternoon that he didn't like. Defendant then went into a drug store for some purposes of his own, and, coming out, stated to the deceased, who was also in said store, that he wanted to see him, and Cox went out with defendant. Soon thereafter the noise of scuffling attracted attention, and individuals in a bank and store building either went to the windows or out into the street, and noticed Kennison and Cox fighting. One witness claims to have seen the first blow struck, and testified that defendant was the aggressor, whereas Kennison testified that Cox was the guilty person. The testimony is overwhelming that, although Cox was the better boxer and was more than holding his own, he retreated from 20 to 40 feet from the point where the fight commenced, and finally knocked defendant against a store building, and then stepped back about 6 feet with his hands at his sides; whereupon Kennison drew a revolver from his pocket and fired at Cox. Cox then rushed toward defendant, was shot in the left arm, and, after the parties had grappled, the fatal shot was fired, so that the bullet penetrated the neck of deceased about two inches below the lobe of the left ear, and, following a downward course, severed veins and arteries, causing almost instant death. No witness other than defendant testified that Cox had made any movement intermediate

the time defendant was knocked against the building and the instant that Kennison put his hand back toward his hip pocket. Defendant excuses his conduct in commencing to shoot by saying that he was whipped and scared; that he had thrown up his hand and asked Cox to quit; whereas witnesses but a few feet distant testified that they only heard Kennison utter an oath. Defendant did not testify that he feared any serious beating at the hands of Cox, nor does that seem probable with several disinterested men within 20 feet of him.

The court, in its solicitude for defendant, gave instructions concerning self-defense, and properly refused to mingle therewith anything relating to an accidental discharge of the firearm. Defendant did not accidentally draw the revolver from his pocket or by misadventure point it at and shoot Cox. There is no claim that the first and second shots were not the result of intent, action and control on the part of Kennison. If the circumstances warranted him in shooting in self-defense, he was justified in doing what was done up to that time, and still more would he be justified in acting when his adversary had grappled with him. On the other hand, if not warranted in firing the first and second shots, he cannot be excused for the third one, nor can it be said that he purposely fired the former shots and did not intentionally cause the last one. Defendant's purpose in this last act of the tragedy will refer back to the criminal intent, if any, that accompanied his actions in presenting his revolver and firing the first shot at Mr. Cox. *Holmes v. State,* 88 Ala. 26, 16 Am. St. Rep. 17; *Epps v. State,* 19 Ga. 102; Wharton, Homicide (3d ed.) sec. 356. Moreover, the testimony tends to prove that defendant expressed the keenest satisfaction when informed that Cox was dead. He denied making those statements, but we are satisfied that he made them, and such conduct destroys his present assertion that the killing was accidental. *State v. Botha,* 27 Utah, 289, 75 Pac. 731.

4. The fifteenth instruction given by the court is as-

sailed by counsel, and is as follows: "The jury are in-structed that, in considering whether the killing was justifiable on the ground that the killing was in self-defense, the jury should consider all the circumstances attending the killing, the conduct of the parties at the time and immediately prior thereto, and the degree of force used by the defendant in making what is claimed to be his self-defense, as bearing upon the question whether the shot, if fired, was actually done in self-defense, or whether it was done in carrying out an unlawful purpose. If the jury believe from all the evidence that the force used was reasonable in character, and such as a reasonable mind would have so considered under the circumstances, it is proper for the jury to consider that fact in determining whether or not the killing was done in self-defense." This instruction was supplemented by instructions numbered 16, 18 and 19, given by the court on its own motion, in-struction numbered 1, requested by the state, and instruc-tions numbered 3 and 5, requested by defendant, and, combined, they fairly state the law of self-defense. *Carle-ton v. State,* 43 Neb. 373; *Davis v. State,* 31 Neb. 240. Counsel, however, argue that the theory of the defense was not self-defense, but accidental killing, and that the opinion of Judge Letton establishes that defense as the law of this case, and the district court was bound to submit it to the jury. Whatever may have been written by Judge LETTON to demonstrate error in certain instruc-tions given on the former trial, the opinion does not hold as contended by defendant, and the district court did not err in this particular.

5. It is argued that the first instruction given by the court at the request of the state does not correctly state the law of self-defense. If, as counsel elsewhere argue in their brief, the theory of the defendant was not self-defense, but an accidental killing, we fail to appreciate any prejudicial error in imperfectly instructing upon a defense not available for defendant. If this instruction is read in connection with the other instructions on said

subject, it will be found that all of the elements of self-defense were minutely and correctly explained to the jurors.

6. It is argued that counsel who assisted the prosecuting attorney in the district court was guilty of misconduct in the examination of witnesses, in statements made during the trial, in causing one Wilkinson to be attached for contempt of court, and in his argument to the jury. We do not commend much that was said and done by counsel, but the trial court, so far as the record made at the time of the trial discloses, ruled promptly and properly, and instructed the jury not to consider the remarks made by counsel during the trial of the case. We do not consider that because of any or all of said improprieties a new trial should be granted. *Bohanan v. State,* 18 Neb. 57, 78; *Argabright v. State,* 62 Neb. 402.

7. It is suggested that there was an abuse of discretion by the trial court in compelling counsel to conclude their argument Saturday night and in limiting the time therefor. Tuesday and Wednesday of the trial week were consumed in selecting a jury, Thursday, Friday and Saturday thereof in the taking of testimony, including two evening sessions. At 7 o'clock P. M. Saturday, all testimony having been offered, the court over defendant's objections directed the final submission of the case that night and limited each side to two hours and fifteen minutes within which to make their arguments. We are not advised concerning the reasons that prompted the court to make said orders, except that some of the jurors preferred to have the case finally submitted that night. The trial court is vested with great discretion in these matters, and unless we can say that discretion has been abused to defendant's prejudice we cannot interfere. It is doubtless true that counsel were somewhat exhausted after their strenuous labor of the week, but the trial court could better judge of that fact than we can, and we are not justified in interfering. *Wartena v. State,* 105 Ind. 445. Counsel assert that it was impossible to properly present an argument

within the limited time. While many witnesses had been examined, the facts testified to were not intricate. The same counsel had previously tried the case, and must have understood and remembered the testimony of the various witnesses, and we do not find that the court abused its discretion in the premises. Nor does the record disclose that counsel asked for an extension of time at the end of their argument. In *State v. Collins,* 70 N. Car. 241, a homicide case, it was held not reversible error to limit the argument of counsel for defense to one hour and a half. *Hart v. State,* 14 Neb. 572; *Rhea v. State,* 63 Neb. 461. While the court acted within its discretion, we do not commend the practice, and especially in cases like the one at bar.

8. Complaint is made that the trial court threatened to send counsel for defendant to jail if he would not obey an order to desist from interrupting the examination of a witness. The record discloses that counsel was not sent to jail, but that he continued to represent his client, and that he refrained from the obnoxious practice which incited the action of the court, and we fail to discern any error in this part of the trial.

This verdict of murder in the second degree is the second one of that character that has been found against defendant. The evidence amply sustains the finding of the jury. The record will not justify a reversal, and the judgment is therefore

AFFIRMED.

ROSE, J., not sitting.