IN RE INTEREST OF WALTER ADAMS, ALLEGED TO BE A MENTALLY
ILL DANGEROUS PERSON.
STATE OF NEBRASKA, APPELLEE, V. WALTER ADAMS, APPELLANT.
430 N.W.2d 295

Filed October 7, 1988.   No. 87-1055.

Randall L. Lippstreu, of Harris & Lippstreu, for appellant.

Jean Rhodes, Morrill County Attorney, for appellee.

BOSLAUGH, WHITE, and SHANAHAN, JJ., and SPRAGUE and
THOMPSON, D. JJ.

SHANAHAN, J.

The Morrill County Mental Health Board found Walter
Adams to be a mentally ill dangerous person within the purview
of the Nebraska Mental Health Commitment Act, Neb. Rev.

Stat. §§ 83-1001 et seq. (Reissue 1987), and ordered Adams' commitment to a mental health facility. The district court for Morrill County affirmed the mental health board's commitment order. We affirm.

Section 83-1009 of the Nebraska Mental Health Commitment Act defines "mentally ill dangerous person":

Mentally ill dangerous person shall mean any mentally ill person, alcoholic person, or drug abusing person who presents:

(1) A substantial risk of serious harm to another person or persons within the near future as manifested by evidence of recent violent acts or threats of violence or by placing others in reasonable fear of such harm; or

(2) A substantial risk of serious harm to himself or herself within the near future as manifested by evidence of recent attempts at, or threats of, suicide or serious bodily harm or evidence of inability to provide for his or her basic human needs, including food, clothing, shelter, essential medical care, or personal safety.

The act further provides:

The petition provided for in section 83-1024 [county attorney's petition alleging that an individual is a mentally ill dangerous person] shall be filed with the clerk of the district court of any county within the judicial district where the subject is found. Upon a showing of good cause therefor, a district judge, of the judicial district where the subject is found, may authorize such petition to be filed in another judicial district within the State of Nebraska with the clerk of the district court of a county within such other judicial district, and in such event all proceedings before the mental health board shall be conducted by the mental health board serving such other county. . . .

§ 83-1025.

Pursuant to the act, on June 23, 1987, the Morrill County attorney filed a petition with the Morrill County board of mental health, asserting that Adams was a mentally ill dangerous person and "presents a substantial risk of serious harm to himself and others . . . as manifested by evidence of inability to provide for his basic human needs, including food,

clothing, shelter, essential medical care, or personal safety, and by reason of making threats on other people . . . ." The county attorney also alleged that Adams, a Morrill County resident, was taken into custody in Lancaster County and that, because less restrictive methods would be ineffective, the mental health board should conduct a hearing to determine whether Adams was a mentally ill dangerous person.

When the petition was filed on June 23, Adams was in official custody at the Lincoln Regional Center in Lancaster County. As soon as the petition was filed, the district court for Morrill County appointed a lawyer to represent Adams in the mental health proceedings, and the mental health board scheduled Adams' hearing for June 29. On June 25, the Morrill County sheriff transported Adams from the regional center to Morrill County. On arrival in Morrill County, the sheriff personally served Adams with notice of the time and place of the hearing before the mental health board, a copy of the petition, and a list of rights accorded one who is a "subject of a petition" before a county board of mental health. See §§ 83-1047 to 83-1067.

At commencement of the June 29 hearing before the mental health board, Adams' lawyer stated:

> I would like to object to this board's jurisdiction over Mr. Adams and over the subject matter of this hearing for the reason that Mr. Adams was located in Lancaster County at the time this petition was filed in Morrill County. . . .
>
> . . . .
>
> . . . I think that the petition has to be filed in the county where the defendant or the subject is found. And in this case, at the time the petition was filed, Mr. Adams was to be found in Lancaster County. Therefore, I question the jurisdiction of this board over Mr. Adams or over the subject matter of the petition.

Taking Adams' jurisdictional objection under advisement, the mental health board then heard testimony from Drs. Allan Roehl and Michael Slosnerick, psychologists at the Panhandle Mental Health Center, and Roger Sterkel, sheriff of Morrill County.

Dr. Roehl testified that, pursuant to the mental health

board's request, he had examined Adams, conducted a clinical interview, and administered the Rorschach, or inkblot, test to Adams. Based on information obtained in that examination and information contained in Adams' files, Dr. Roehl concluded that Adams suffered from paranoid schizophrenia and explained:

> The responses to the Rorschach or ink blot test were typical of a person with constricted personality, poor judgment, lack of empathy and other things consistent with the diagnosis of paranoid schizophrenia. My conversation with him revealed a person with very flattened affect, guarded and defensive attitude toward responding to the questions, and that ties in with the file which carries several diagnoses, paranoid schizophrenia is one of them . . . .

Dr. Roehl expressed the opinion that Adams was dangerous to himself or others and based his opinion

> [u]pon dangerous incidents in the past involving his children, base it upon from the type of mental disturbance which includes delusions, hallucinations, threats against the president, bizarre processes of thinking, supported by testing today, which indicates that those bizarre processes are still ongoing indicating continuing lack of control and poor judgment.

Dr. Slosnerick, a witness for Adams, testified that he had examined Adams in 1984 and 1985 and had concluded that "Adams' behavior was very unusual and bordering on psychotic and . . . likely to continue to deteriorate," but felt that Adams "at that time" was not a danger to himself or others. Dr. Slosnerick explained that his previous evaluations of Adams were based on somewhat limited data and that he had recommended further evaluation of Adams. However, after considering information derived in his current examination of Adams and clinical records for Adams, Dr. Slosnerick testified that "Mr. Adams does present a danger to others."

As sheriff of Morrill County, Roger Sterkel had known Adams for 6 or 7 years and had first come in contact with Adams relative to a child neglect problem involving the Adams children, which necessitated removal of the children from the

Adams home in Morrill County. When Adams threatened the life of the President of the United States in 1984, the Secret Service came to Morrill County and interrogated Adams, but no arrest was made on account of the threat.

Over Adams' objection (relevance), the mental health board received documentary evidence, exhibits 4 and 5, concerning Adams' 1986 convictions for attempted incest and third degree sexual assault.

Exhibit 4 was the amended two-count information which was filed against Adams on February 11, 1986. Count I charged that Adams attempted sexual intercourse with his daughter in 1984. Count II charged that, in 1984, Adams, in violation of Neb. Rev. Stat. § 28-320 (Reissue 1985), subjected his 6-year-old daughter to sexual contact, using force or the "threat of force" to accomplish the criminal sexual contact. Section 28-320(1) defines the crime of third degree sexual assault: "Any person who subjects another person to sexual contact and (a) overcomes the victim by force, threat of force, express or implied . . . is guilty of sexual assault [in the third degree if the actor shall not have caused serious personal injury to the victim. § 28-320(3)]." The sexual contact condemned in a third degree criminal sexual assault is the actor's touching the victim's sexual or intimate parts or, conversely, the victim's touching the actor's sexual or intimate parts. See Neb. Rev. Stat. § 28-318(5) (Reissue 1985).

Exhibit 5 was a copy of the district court's journal entry on February 11, 1986, reflecting entry and acceptance of Adams' guilty plea to each charge in the amended information.

At the conclusion of the hearing, the mental health board overruled Adams' objection to jurisdiction and, having found that Adams was a mentally ill dangerous person, ordered Adams' commitment to the Hastings Regional Center. On Adams' appeal to the district court, the commitment order was affirmed.

Adams contends first that the board of mental health lacked jurisdiction over Adams and the subject matter; second, the board received inadmissible evidence; and, third, the State failed to present clear and convincing evidence that Adams was a mentally ill dangerous person.

## JURISDICTION

Adams' jurisdictional claim is based on § 83-1025, which states that a mental health petition must be filed in the judicial district in which the subject is "found." According to Adams' interpretation of § 83-1025, to confer jurisdiction on a county board of mental health, the person to be committed must be physically present within the judicial district where the mental health board is located when the mental health petition is initially filed with the board which will hold the commitment hearing. Because Adams was in Lancaster County, outside the judicial district in which Morrill County is situated, Adams argues that the Morrill County board of mental health lacked jurisdiction in the proceedings for Adams' commitment.

"Jurisdiction is the inherent power or authority to decide a case; venue is the place of trial of an action—the site where the power to adjudicate is to be exercised." *State ex rel. Bauersachs v. Williams*, 215 Neb. 757, 759, 340 N.W.2d 431, 433 (1983). See, also, *Blitzkie v. State*, 228 Neb. 409, 422 N.W.2d 773 (1988); *Chicago Lumber Co. v. School District No. 71*, 227 Neb. 355, 417 N.W.2d 757 (1988).

> "Jurisdiction of the subject matter is the power to hear and determine cases of the general class to which the proceedings in question belong; the power to deal with the general subject involved in the action; and means not simply jurisdiction of the particular case then occupying the attention of the court but jurisdiction of the class of cases to which the particular case belongs . . . ."

*Lewin v. Lewin*, 174 Neb. 596, 599-600, 119 N.W.2d 96, 99 (1962) (quoting 21 C.J.S. *Courts* § 23 (1940)).

Section 83-1025 bears a striking resemblance to the statute involved in *State ex rel. Bauersachs v. Williams, supra*. In *Bauersachs*, the plaintiff filed a paternity action in Sarpy County, in spite of the fact that both the plaintiff and her child were domiciled in Douglas County. According to Neb. Rev. Stat. § 43-1411 (Reissue 1984), a proceeding to establish paternity "may be instituted in any district court of the district where the child is domiciled or found . . . ." In rejecting Williams' claim that the Sarpy County District Court lacked jurisdiction, we noted that, generally speaking, Nebraska's

district courts are empowered to hear paternity cases and concluded:

Williams' question concerning the proceedings relates to venue and not to jurisdiction in the strict sense of the term. District Courts in Nebraska have general jurisdiction regarding filiation proceedings . . . . The trial court had jurisdiction to adjudicate Williams' paternity of [the] child. After commencement of the action in Sarpy County, Williams did not request transfer of the proceedings . . . . Williams did not object to venue until conclusion of the evidence at trial. Unless prohibited by a venue statute, a defendant can waive the personal privilege to be sued in a particular county. See 92 C.J.S. *Venue* § 77 (1955). In the absence of the appropriate objection to venue or the timely motion to transfer the proceedings, Williams cannot now question venue of the proceedings in Sarpy County.

215 Neb. at 759-60, 340 N.W.2d at 433.

Beyond question, the Morrill County board of mental health, by virtue of the Nebraska Mental Health Commitment Act, is empowered to hear a mental health petition for commitment of a mentally ill dangerous person to an appropriate mental health facility. Therefore, in Adams' case, a board of mental health has subject matter jurisdiction.

In examining § 83-1025, we note that a district court, within the judicial district where the alleged mentally ill dangerous person is found at the commencement of the proceedings, may, on good cause shown, authorize the mental health proceedings to be filed in another judicial district, effectively transferring the mental health proceedings to another judicial district by a procedure somewhat similar to the transfer of civil proceedings from the district court of one county to the district court of another county. See Neb. Rev. Stat. § 25-410 (Reissue 1985). If § 83-1025 were literally construed, as suggested by Adams, the procedure authorized by § 83-1025 regarding refiling or transferring mental health proceedings would be tantamount to a district court conferring subject matter jurisdiction on another tribunal, which lacked jurisdiction. We have repeatedly stated that litigants cannot confer subject matter jurisdiction on

a judicial tribunal by acquiescence or consent. See, *Coffelt v. City of Omaha*, 223 Neb. 108, 388 N.W.2d 467 (1986); *Riedy v. Riedy*, 222 Neb. 310, 383 N.W.2d 742 (1986). Much of what we have expressed concerning litigants' inability to confer subject matter jurisdiction is analogously applicable in determining the nature of § 83-1025, that is, whether § 83-1025 prescribes jurisdiction or venue relative to mental health proceedings. If Adams' interpretation of § 83-1025 were correct, a district court might confer jurisdiction on another tribunal, which lacked jurisdiction in the first instance, inasmuch as jurisdiction, as a necessary conclusion of Adams' argument, is restrictively exercised only where the subject of a mental health petition is found when the petition is filed. However, the statutory procedure for refiling or transferring mental health proceedings, in accordance with the authority embodied in § 83-1025, indicates that the essence of § 83-1025 is venue, not jurisdiction. Therefore, we hold that § 83-1025 is a venue statute, expressing the correct site for proceedings before a county board of mental health pursuant to the Nebraska Mental Health Commitment Act.

Unlike jurisdiction, venue is a personal privilege which, if not raised by a party, is waived unless prohibited by law. As we expressed in *Blitzkie v. State*, 228 Neb. 409, 421, 422 N.W.2d 773, 780 (1988):

"Where the court has general jurisdiction of the subject matter, the right of a defendant to be sued in a particular county or district is a mere personal privilege which he may waive." 92 C.J.S. *Venue* § 77 at 774 (1955). See, also, *id.*, § 124 at 820: "Venue statutes are generally regarded as conferring a personal privilege which may be waived by the defendant."

See, also, *Peitz v. Hausman*, 198 Neb. 344, 252 N.W.2d 628 (1977); *Corn Belt Products Co. v. Mullins*, 172 Neb. 561, 110 N.W.2d 845 (1961).

Adams' objection to the proceedings was directed to the mental health board's jurisdiction, not Morrill County as the correct venue for the proceedings. Adams never requested that the proceedings be refiled or transferred to another judicial district. Consequently, Adams waived any question about

venue for the proceedings. We do not determine whether Lancaster County or Morrill County was the correct venue indicated by § 83-1025. Rather, as we have determined, the Morrill County board of mental health had jurisdiction for the proceedings, and Adams has failed to raise the question concerning the correct venue prescribed by § 83-1025. Hence, Adams' objection to jurisdiction is without merit.

## ADMISSIBILITY OF EVIDENCE

Next, Adams complains that documentary evidence concerning his sexual misconduct was improperly received in the proceedings. The petition alleged that Adams was a mentally ill dangerous person and "presents a substantial risk of serious harm to himself and others" because he was unable to provide for his basic human needs and threatened others. See § 83-1009.

Section 83-1025 provides: "The petition shall include a description of the behavior which constitutes the basis for the petitioner's concluding that the individual is a mentally ill dangerous person . . . ."

Under § 83-1025, a commitment petition must state facts or a description of the behavior which is the basis for the conclusion that the person sought to be committed to a mental health facility is a mentally ill dangerous person, but need not recite the evidence for the conclusion that commitment is warranted. *In re Interest of H.W.*, 220 Neb. 423, 370 N.W.2d 155 (1985).

The Nebraska Evidence Rules, Neb. Rev. Stat. §§ 27-101 to 27-1103 (Reissue 1985), apply to proceedings under the Nebraska Mental Health Commitment Act. § 83-1059.

Regarding a third degree sexual assault, the gravamen of the criminal offense is a nonconsensual sexual contact, namely, sexual touching achieved by force or "threat of force." See §§ 28-320(1) and 28-318(5). The information filed against Adams alleged that he subjected his 6-year-old daughter to sexual contact after overcoming her by "threat of force." Under the circumstances, "threat of force," as a necessary element for a third degree criminal sexual assault in violation of § 28-320(1), qualifies as the threat of violence to another person, see § 83-1009(1), which is embodied in the phrase

"threats on other people" contained in the petition for Adams' commitment. The threatened force or violence, charged against Adams and admitted by his guilty plea, is Adams' admission as a party to the proceedings. See Neb. Evid. R. 801(4)(b)(i) (§ 27-801(4)(b)(i)). Existence of a threat of force, which Adams admitted by his guilty plea to the criminal charge of third degree sexual assault, is relevant to prove that Adams is a mentally ill dangerous person, manifested by a recent threat of violence. See § 83-1009(1). Therefore, documentary evidence regarding Adams' conviction for third degree sexual assault was admissible. See Neb. Evid. R. 401: "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." § 27-401. There is no merit to Adams' contention that the board of mental health considered inadmissible evidence.

## SUFFICIENCY OF EVIDENCE

Addressing Adams' question concerning sufficiency of the evidence, we reiterate the principle employed in this court's review of a determination that an individual is a mentally ill dangerous person: In reviewing a district court's judgment under the Nebraska Mental Health Commitment Act, the Supreme Court will affirm the district court's judgment unless, as a matter of law, the judgment is unsupported by evidence which is clear and convincing. *In re Interest of Kinnebrew*, 224 Neb. 885, 402 N.W.2d 264 (1987).

Without our again setting forth all the evidence adduced at the commitment hearing, evidence demonstrated that Adams was dangerous to himself and others. The evidence is sufficient for a finding that Adams is a mentally ill dangerous person within the meaning of § 83-1009. The psychologists' collective opinion was that Adams is dangerous to himself and others. Dr. Roehl characterized Adams' particular disorder as paranoid schizophrenia. Nothing rebutted the psychologists' opinions regarding Adams' mental condition. The county board of mental health's order and the district court's judgment are supported by evidence. As a matter of law, we cannot conclude that the evidence is not clear and convincing.

AFFIRMED.