STATE OF NEBRASKA, APPELLEE, V. MARK W. VEJVODA, APPELLANT.

438 N.W.2d 461

Filed March 31, 1989.   No. 88-145.

William A. Francis, of Cunningham, Blackburn, Livingston, Francis, Cote, Brock & Cunningham, for appellant.

Robert M. Spire, Attorney General, and Vanessa R. Jones for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

SHANAHAN, J.

In a bench trial in the county court for Hall County, Mark Vejvoda was convicted of drunk driving and received an enhanced sentence as the result of his second conviction for drunk driving. See Neb. Rev. Stat. § 39-669.07 (Reissue 1988). On appeal, the district court affirmed Vejvoda's conviction and sentence. Vejvoda contends that the evidence is insufficient to

sustain his conviction for drunk driving and that the State failed to prove that Hall County was the venue for his trial because the court improperly took judicial notice that locations mentioned in Vejvoda's trial were within Hall County.

## VEJVODA'S TRIAL

Officer Elmer Edwards of the Grand Island Police Department was the sole witness at Vejvoda's trial. Edwards testified that on May 1, 1987, at 2:14 a.m., he was in the vicinity of 7th and Vine Streets and noticed a vehicle proceeding west on 7th Street, "weaving back and forth across the entire width of the street." Edwards had observed the vehicle for "2½ to 3 blocks," when the car commenced a right turn from 7th Street onto Oak Street and "ran over the curb section located at the . . . northeast corner of the intersection." In pursuit, Edwards followed the car northbound on Oak Street to 8th Street, where Edwards stopped the pursued vehicle.

On confronting the car's driver, whom Edwards eventually identified as Vejvoda, Edwards observed that Vejvoda's eyes were bloodshot and watery, and a strong odor of alcohol emanated from Vejvoda's car. According to Edwards, Vejvoda's reactions were "slow and sluggish" while he fumbled to produce a driver's license. Edwards then asked Vejvoda to step out of his car for field sobriety tests. Vejvoda was "swaying and wobbling" and had difficulty maintaining his balance during the field sobriety tests. In Edwards' opinion, Vejvoda was under the influence of alcohol when stopped by the officer, who later arrested Vejvoda for drunk driving. In all his testimony concerning his observations, pursuit, and stop of the vehicle, Edwards never mentioned the city or county where the events occurred. Defense counsel did not cross-examine Edwards, and the prosecution rested.

After Vejvoda offered no evidence, the prosecutor apparently realized that Edwards had not testified that the events involving Vejvoda occurred in Hall County. When the prosecutor asked leave to recall Edwards for testimony concerning the location of events, the court responded, "The Court will take judicial notice of the fact that all of the addresses and areas described are those — are those within the city limits of the city of Grand Island which lies wholly within

Hall County." Vejvoda objected to the court's "taking judicial notice after the . . . State has rested." In closing argument, Vejvoda argued, among other things, that the State had failed to prove proper venue. The court then found Vejvoda guilty of drunk driving.

Vejvoda contends, first, that there is insufficient evidence to sustain his conviction for drunk driving, and, second, the court improperly took judicial notice of facts establishing the site of the events on which his conviction is based. In essence, Vejvoda's venue claim is an assertion that the court improperly took judicial notice that Grand Island in Hall County was the site of the events in question and, as the result of the improper judicial notice, determined that venue was evidentially established as Hall County.

## SUFFICIENCY OF EVIDENCE

In determining whether evidence is sufficient to sustain a conviction in a bench trial, the Supreme Court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented, which are within a fact finder's province for disposition. A conviction in a bench trial of a criminal case is sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. See *State v. Brown*, 225 Neb. 418, 405 N.W.2d 600 (1987).

With no explanation for the obvious or further comment necessary, we find that the evidence supports Vejvoda's conviction for drunk driving, the substantive offense charged against Vejvoda.

## GUARANTEE OF VENUE

The venue problem in this appeal could have been easily avoided by the court's merely granting the State's motion to withdraw its rest and present evidence on venue. "Even in criminal prosecutions the withdrawal of a rest in a trial on the merits is within the discretion of the trial court." *State v. Putnam*, 178 Neb. 445, 448-49, 133 N.W.2d 605, 608 (1965). Unfortunately, however, instead of allowing the State to recall Edwards to answer a single, simple question identifying venue, the court chose to try to remedy the evidential situation and created the venue problem presented in Vejvoda's appeal.

Vejvoda claims that "an accused is guaranteed the right to be tried in the county where the offense is committed by Article 1, Section 11 of the Constitution of the State of Nebraska." Brief for appellant at 3. Vejvoda, however, incorrectly interprets the constitutional guarantee in article I, § 11, of the Nebraska Constitution, which grants to a criminal defendant the right to "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." We have characterized the preceding constitutional language as "too plain to require interpretation." *Marino v. State*, 111 Neb. 623, 625, 197 N.W. 396, 397 (1924). Article I, § 11, of the Nebraska Constitution relates to an impartial jury in a criminal case for which a jury trial is constitutionally guaranteed, but does not grant a defendant a constitutional right to be tried in a particular county. In the present case, Vejvoda was convicted in a bench trial. Therefore, article I, § 11, of the Nebraska Constitution concerning a jury trial is inapplicable to Vejvoda's case.

Vejvoda's right to be tried in the county in which the criminal offense is alleged to have been committed is secured by statute rather than by the Nebraska Constitution. Neb. Rev. Stat. § 29-1301 (Reissue 1985) provides that "[a]ll criminal cases shall be tried in the county where the offense was committed . . . unless it shall appear to the court by affidavits that a fair and impartial trial cannot be had therein." While proper venue in a criminal case may be established by circumstantial evidence, we have held that the State must prove proper venue beyond a reasonable doubt. *Union P. R. Co. v. State*, 88 Neb. 547, 130 N.W. 277 (1911); *Keeler v. State*, 73 Neb. 441, 103 N.W. 64 (1905). It is clear from Nebraska decisions that a defendant may waive the statutorily designated venue for the trial of a criminal case in accordance with § 29-1301 concerning a change of venue. See *Kennison v. State*, 83 Neb. 391, 119 N.W. 768 (1909). Whether venue is an element of the substantive offense charged against an accused is apparently an unresolved issue in Nebraska. See, however, *State v. Harris*, 48 Wash. App. 279, 281-82, 738 P.2d 1059, 1061 (1987): "As a general rule, proof of venue is necessary in a criminal prosecution. [Citations omitted.] However, venue is not an element of the crime

[citations omitted], and it need not be proved beyond a reasonable doubt [citation omitted]." See, further, *State v. Graycek*, 335 N.W.2d 572, 574 (S.D. 1983): "Venue, not being an integral part of a criminal offense, does not affect the question of the guilt or innocence of the accused [and may be proved] by a preponderance of the evidence . . . ." Cf., *State v. Barnes*, 7 Ohio App. 3d 83, 84, 454 N.E.2d 572, 574 (1982): "Venue with respect to the situs of a crime is ordinarily considered an element of the offense which must be proved along with the other elements"; *State v. Hester*, 145 Ariz. 574, 703 P.2d 518 (1985) (venue is an essential element).

## WAIVER OF VENUE

If the rules regarding waiver of venue in a civil action were applicable in the present appeal, Vejvoda's appellate claim based on venue would undoubtedly fail. At the risk of waiver, to preserve a claim of improper venue in a civil case, a defendant must raise the venue issue before or in the defendant's answer. In a civil action, if a defendant fails to timely raise the issue of proper venue, the defendant waives any venue question. See, *In re Interest of Adams*, 230 Neb. 109, 430 N.W.2d 295 (1988) (venue under the Nebraska Mental Health Commitment Act waived by failure to request transfer at appropriate time); *Blitzkie v. State*, 228 Neb. 409, 422 N.W.2d 773 (1988) (venue in a transitory civil action under the State Tort Claims Act waived unless raised in the answer or earlier). Unlike venue in a civil case, however, a statutorily designated venue in a criminal case may not be waived by a defendant's failure to raise the venue issue before or at trial. *Union P. R. Co. v. State, supra*; *State v. Lindsey*, 193 Neb. 442, 227 N.W.2d 599 (1975). In *Union P. R. Co. v. State, supra*, involving a prosecution for violation of the state's "anti-pass law" regarding railroads, the court was faced with a situation in which "the matter of venue was entirely overlooked by both the prosecutor and the trial court . . . ." *Union P. R. Co., supra* at 550, 130 N.W. at 278. Despite the fact that the defendant apparently did not raise the venue issue at trial, the court held, over dissent, that the defendant's conviction should be reversed "[f]or the sole reason that the state failed to prove the venue . . . ." *Union P. R. Co., supra* at 551, 130 N.W. at 279. (In *Union P. R. Co. v. State, supra*, the

dissent argued that the "ancient rule" that venue must be proved beyond a reasonable doubt was not "based upon reason," and further noted that "the rule that a defendant may waive the right to insist upon a trial in any particular county, and that if he goes to trial without objection he does so, is in accord with reason and modern conditions . . . ." (Sedgwick, J., dissenting.) *Union P. R. Co., supra* at 552, 130 N.W. at 279.)

Thus, Nebraska cases indicate that a defendant in a criminal case may waive the issue of a statutorily designated venue by requesting a change of venue in accordance with § 29-1301, but a defendant does not waive the venue issue by failure to raise the issue before or during trial. See *State v. Lindsey, supra*. In the absence of a defendant's waiver of venue, the State has the burden to prove proper venue beyond a reasonable doubt. *State v. Lindsey, supra; Union P. R. Co. v. State, supra; Keeler v. State, supra*. With this in mind, we turn to Vejvoda's claim that proper venue was not sufficiently proved in his case.

### PROOF OF VENUE

The venue of an offense may be proven like any other fact in a criminal case. It need not be established by positive testimony, nor in the words of the information; but if from the facts appearing in evidence the only rational conclusion which can be drawn is that the offense was committed in the county alleged, it is sufficient.

*Weinecke v. State*, 34 Neb. 14, 24, 51 N.W. 307, 310 (1892). See, also, *Gates v. State*, 160 Neb. 722, 71 N.W.2d 460 (1955); *State v. Liberator*, 197 Neb. 857, 251 N.W.2d 709 (1977); *State v. Laflin*, 201 Neb. 824, 272 N.W.2d 376 (1978); *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981).

The only testimony regarding venue was that of Edwards', a Grand Island police officer, who observed Vejvoda's car at "7th and Vine Streets" and later apprehended Vejvoda on a street called "Oak." Edwards never identified the city or county where he observed and apprehended Vejvoda. As this court noted in *State v. Bouwens*, 167 Neb. 244, 247, 92 N.W.2d 564, 566 (1958), the fact that a defendant was arrested by policemen of a particular city "is not proof that the offense was committed within the jurisdiction . . . of the city . . . ." When the judicial notice in question is disregarded, the evidence offered in

Vejvoda's case fails to establish that either a Vine Street or an Oak Street exists in Grand Island or Hall County. A defendant's arrest by a law enforcement officer of a particular political subdivision does not identify or establish the political subdivision as the proper venue in a criminal case. *State v. Bouwens, supra.* Therefore, without the court's judicial notice that events concerning Vejvoda occurred in Grand Island within Hall County, the evidence fails to establish venue.

In this appeal, the State does not challenge the current Nebraska rule that a waiver does not result from a defendant's inaction on a venue question in a criminal case, nor does the State take issue with the necessity of evidence beyond a reasonable doubt regarding proof of venue.

## JUDICIAL NOTICE

Neb. Evid. R. 201(2), Neb. Rev. Stat. § 27-201(2) (Reissue 1985), pertains to judicial notice of adjudicative facts and states: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) generally known within the territorial jurisdiction of the trial court or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

A fact is adjudicative if the fact affects the determination of a controverted issue in litigation, or, as one author has characterized adjudicative facts:

> When a court or an agency finds facts concerning the immediate parties—who did what, where, when, how, and with what motive or intent—the court or agency is performing an adjudicative function, and the facts so determined are conveniently called adjudicative facts. . . .
>
> Stated in other terms, the adjudicative facts are those to which the law is applied in the process of adjudication. They are the facts that normally go to the jury in a jury case. They relate to the parties, their activities, their properties, their businesses.

Davis, *Judicial Notice*, 55 Colum. L. Rev. 945, 952 (1955).

Concerning judicial notice of adjudicative facts, Weinstein observes:

> The obvious cost of establishing adjudicative facts in an adversary proceeding—in terms of time, energy and

money—justifies dispensing with formal proof when a matter is not really disputable. . . . When facts do not possess this requisite degree of certainty, our traditional procedure has been to require proof within the framework of the adversary system for reasons well-expressed by Professor Davis: "The reason we use trial-type procedure, I think, is that we make the practical judgment, on the basis of experience, that taking evidence subject to cross-examination and rebuttal, is the best way to resolve controversies involving disputes of adjudicative facts, that is, facts pertaining to the parties. The reason we require a determination on the record is that we think fair procedure in resolving disputes of adjudicative facts calls for giving each party a chance to meet in the appropriate fashion the facts that come to the tribunal's attention, and the appropriate fashion for meeting disputed adjudicative facts includes rebuttal evidence, cross-examination, usually confrontation, and argument (either written or oral or both)." [Quoting from K. Davis, *A System of Judicial Notice Based on Fairness and Convenience*, in Perspectives of Law 69 (1964).]

1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 201[03] at 201-23 to 201-24 (1988).

When neither of the alternative tests prescribed in Neb. Evid. R. 201(2) is satisfied, judicial notice of an adjudicative fact is improper. See *Cardio-Medical Assoc. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68 (3d Cir. 1983). See, also, 1 J. Weinstein & M. Berger, *supra*.

A judge or court may take judicial notice, whether requested or not. Neb. Evid. R. 201(3). Judicial notice of an adjudicative fact may be taken at any stage of the proceedings. Neb. Evid. R. 201(6).

#### JUDICIAL NOTICE: A SPECIES OF EVIDENCE

Judicial notice of an adjudicative fact is a species of evidence, which, if relevant as an ultimate fact or a fact from which an ultimate fact may be inferred, is received without adherence to the Nebraska Evidence Rules otherwise applicable to admissibility of evidence and establishes a fact without formal evidentiary proof. See, *In re Samaha*, 130 Cal. App.

116, 19 P.2d 839 (1933) (judicial notice is a form of evidence); *Moss v. Aetna Life Ins. Co.*, 267 S.C. 370, 377, 228 S.E.2d 108, 112 (1976): judicial notice "means that the court will admit into evidence and consider, without proof of the facts, matters of common and general knowledge"; *National Aircraft Leasing v. American Airlines*, 74 Ill. App. 3d 1014, 1017, 394 N.E.2d 470, 474 (1979): "Judicial notice is an evidentiary concept which operates to admit matters into evidence without formal proof . . . ." Although Neb. Evid. R. 201 does not expressly require relevance for judicial notice, an irrelevant fact cannot be validly classified as an "adjudicative fact," the only type of fact noticeable under Neb. Evid. R. 201. See, *Blank v. Kirwan*, 39 Cal. 3d 311, 703 P.2d 58, 216 Cal. Rptr. 718 (1985); *United States v. Byrnes*, 644 F.2d 107 (2d Cir. 1981); 21 C. Wright & K. Graham, Federal Practice and Procedure § 5104 (1977).

## JUDICIAL NOTICE V. A JUDGE'S PERSONAL KNOWLEDGE

Judicial notice, however, is not the same as extrajudicial or personal knowledge of a judge. "What a judge knows and what facts a judge may judicially notice are not identical data banks. . . . [A]ctual private knowledge by the judge is no sufficient ground for taking judicial notice of a fact as a basis for a finding or a final judgment . . . ." McCormick on Evidence § 329 at 922-23 (E. Cleary 3d ed. 1984). As Wigmore observes:

There is a real but elusive line between the judge's *personal knowledge* as a private man and these matters of which he takes judicial notice as a judge. The latter does not necessarily include the former; as a judge, indeed, he may have to ignore what he knows as a man and contrariwise.

. . . .

It is therefore plainly accepted that the judge is not to use from the bench, under the guise of judicial knowledge, that which he knows *only as an individual* observer outside of court. The former is in truth "known" to him merely in the fictional sense that it is known and notorious to all men, and the dilemma is only the result of using the term "knowledge" in two senses. Where to draw the line between knowledge by notoriety and knowledge by personal observation may sometimes be difficult but the

principle is plain.
(Emphasis in original.) 9 J. Wigmore, Evidence in ' Trials at
Common Law § 2569(a) at 722-23 (J. Chadbourn rev. 1981).
See, also, *Government of Virgin Islands v. Gereau*, 523 F.2d 140
(3d Cir. 1975).

## JUDICIAL NOTICE IN CRIMINAL CASES

In function and effect, judicial notice in a civil action is
fundamentally different from judicial notice in a criminal case.
"In a civil action or proceeding, the judge shall instruct the jury
to accept as conclusive any fact judicially noticed. In a criminal
case, the judge shall instruct the jury that it may, but is not
required to, accept as conclusive any fact judicially noticed."
Neb. Evid. R. 201(7). In a civil action, the adjudicative fact
judicially noticed is conclusively established and binds the jury,
whereas in a criminal case a jury ultimately has the freedom to
find that an adjudicative fact has not been established
notwithstanding judicial notice by the trial court. If the
conclusive effect of judicial notice in a civil action were
transposed to the trial of a criminal case, judicial notice might
supply proof of an element in the charge against an accused and
thereby have the practical effect of a directed verdict on the
issue of the defendant's guilt. The actual danger of judicial
notice as a directed verdict against an accused was carefully
considered in *State v. Lawrence*, 120 Utah 323, 234 P.2d 600
(1951), which involved a conviction of grand larceny, that is,
theft of property with value in excess of $50. As recounted by
the court in *Lawrence*:

> At the conclusion of the evidence, the defendant's
> counsel moved the court for a directed verdict on the
> ground that there had been no evidence of value of the
> stolen car. The State's attorney might properly and with
> little difficulty have moved to re-open and supply the
> missing evidence. He did not do so but instead argued that
> judicial notice could be taken of the value of the car. The
> court denied defendant's motion and included in its
> instructions to the jury the following:
>
> . . . .
>
> "In this case you will take the value of this property as
> being in excess of $50.00 and therefore the defendant, if he

is guilty at all, is guilty of grand larceny."
120 Utah at 326, 234 P.2d at 601.

In that setting, the *Lawrence* court directed its attention to the prosecution's argument that the court could take judicial notice of the automobile's value and instruct the jury accordingly. Rejecting the State's argument, the court concluded:

It is to be admitted that upon the surface there doesn't appear to be much logic to the thought that a jury would not be bound to find that the car involved here (1947 Ford 2-Door Sedan) is worth more than $50. However, under our jury system, it is traditional that in criminal cases juries can, and sometimes do, make findings which are not based on logic, nor even common sense. No matter how positive the evidence of a man's guilt may be, the jury may find him not guilty and no court has any power to do anything about it. Notwithstanding the occasional incongruous result, this system of submitting all of the facts in criminal cases to the jury and letting them be the exclusive judges thereof has lasted for some little time now and with a fair degree of success. If the result in individual cases at times seems illogical, we can be consoled by the words of Mr. Justice Holmes, that in some areas of the law, "a page of history is worth a volume of logic." We, who live with it, have a fervent devotion to the jury system, in spite of its faults. We would not like to see it destroyed nor whittled away. If a court can take one important element of an offense from the jury and determine the facts for them because such fact seems plain enough to him, then which element cannot be similarly taken away, and where would the process stop?

120 Utah at 330-31, 234 P.2d at 603. The court then reversed Lawrence's conviction and ordered a new trial.

In *U.S. v. Mentz*, 840 F.2d 315 (6th Cir. 1988), the government prosecuted Mentz in a jury trial on charges of bank robbery. To convict Mentz, the government had to prove that Mentz robbed a financial institution insured by the Federal Deposit Insurance Corporation. See 18 U.S.C. § 2113(a) and (f) (1982). When Mentz moved for dismissal of the charges at

the close of the government's case, claiming that evidence failed to establish that the banks were FDIC-insured at the time of the robberies, the court overruled Mentz' motion and, although there was no evidence of FDIC insurance, instructed the jury that each of the banks, which Mentz was accused of robbing, was "insured by the Federal Deposit Insurance Corporation at the time of the offense alleged in the indictment." (Emphasis omitted.) 840 F.2d at 318-19. In reversing Mentz' conviction, the court stated:

> Regardless of how overwhelming the evidence may be, the Constitution delegates to the jury, not to the trial judge, the important task of deciding guilt or innocence. "[The jury's] overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, regardless of how overwhelming the evidence may point in that direction. The trial judge is thereby barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused." *United States v. Martin Linen Supply Co.* [citation omitted].

840 F.2d at 319.

The *Mentz* court continued:

> We agree with Mentz that the trial judge invaded the jury's province by instructing that body, in clear and unequivocal language, that the banks were FDIC insured at the time the robberies occurred. His conclusive statement left no room for the jury to believe otherwise. The judge improperly cast himself in the role of trier of fact, and directed a verdict on an essential element of the bank robbery charge. His instructions had the effect of relieving the government of its burden of proving, beyond the *jury's* reasonable doubt, that the accused committed the crimes charged. . . .
>
> It is not important that the jury might have reached a similar conclusion had it been given an opportunity to

decide the issue under a correct instruction. A plea of not guilty places all issues in dispute, "even the most patent truths." [Citations omitted.] The First Circuit has succinctly stated this point: "Whatever probative force the government's proof possessed, the jury had the power to accept or reject it—or to find it insufficiently persuasive. The defendant had a correlative right to free and unhampered exercise by the jury of all its powers." [Quoting from *U.S. v. Argentine*, 814 F.2d 783 (1st Cir. 1987).]

840 F.2d at 320.

The court in *Mentz* then noted: "Since the government's evidence on this issue consisted mainly of witness testimony, the trial judge replaced the jury by reaching a conclusion based on assessing the credibility of witnesses and weighing the probative value of the evidence." 840 F.2d at 320 n.8.

Specifically referring to judicial notice under Fed. R. Evid. 201(g), the counterpart to Neb. Evid. R. 201(7), the court concluded in *Mentz*:

A court may take judicial notice of adjudicative facts in a criminal case, whether requested or not. Rule 201(c), (f), Fed.R.Evid. When the court does so, however, there will normally be a record of this. "Care should be taken by the court to identify the fact it is noticing, and its justification for doing so." *Colonial Leasing Company of New England v. Logistics Control Group International*, 762 F.2d 454, 459 (5th Cir.1985). This facilitates intelligent appellate review, and is particularly necessary when the fact noticed is an essential element of the crime charged.

. . .

. . . In a criminal case, a trial court that takes judicial notice of an adjudicative fact must "instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed." Rule 201(g), Fed.R.Evid. This provision "contemplates that the jury in a criminal case [will] pass upon facts which are judicially noticed." *United States v. Jones*, 580 F.2d 219, 224 (6th Cir.1978). As so construed, Rule 201(g) preserves the jury's "traditional prerogative to ignore even uncontroverted facts in

reaching a verdict," and thereby prevents the trial court from transgressing the spirit, if not the letter, of the Sixth Amendment right to a jury trial by directing a partial verdict as to the facts. [Citations omitted.]

A trial court commits constitutional error when it takes judicial notice of facts constituting an essential element of the crime charged, but fails to instruct the jury according to Rule 201(g). The court's decision to accept the element as established conflicts with the bedrock principle that the government must prove, beyond the *jury's* reasonable doubt, every essential element of the crime. [Citation omitted.]

Even assuming the district court in this case judicially noticed the insurance coverage by the FDIC, it was obligated to inform the jury that it could disregard the facts noticed. The court's failure to make such a statement permitted the jury to convict Mentz without ever examining the evidence concerning an element of the crime charged, and thus violated his Sixth Amendment right to a jury trial.

840 F.2d at 322-23.

As one commentator has remarked concerning judicial notice and Fed. R. Evid. 201(g), which remark is equally applicable to Neb. Evid. R. 201(7):

With respect to criminal cases, Rule 201(g) apparently contemplates that contrary evidence is admissible, which of course means that evidence, if any, in support of the fact judicially noticed may also be admitted. Problems arising with respect to the court considering inadmissible evidence in determining the propriety of taking judicial notice coupled with the confusion that naturally would be expected to arise in the jury's mind when presented with judicial notice accompanied by conflicting evidence, makes resort to judicial notice in criminal cases where the opposing party is prepared to introduce contrary evidence highly undesirable.

M. Graham, Handbook of Federal Evidence § 201.7 at 83 (2d ed. 1986).

## JUDICIAL NOTICE IN A BENCH TRIAL

Potential problems from judicial notice in a bench trial are discussed in 21 C. Wright & K. Graham, Federal Practice and Procedure § 5104 at 488 (1977):

[T]he high degree of indisputability required before a fact can be judicially noticed applies to both forms of litigation [jury trials and court or bench trials]. However, the procedural context in which notice is taken makes the process quite different in court trials. Since the judge is not insulated, as the jury is, from the material consulted in deciding whether or not to take notice, it may make little difference whether he takes formal judicial notice based on the material or whether he is simply convinced of the fact as a result of having examined the sources. Technically, the source material is not in evidence, and thus a finding that was without other support in the record could not stand unless the matter was properly noticeable; but otherwise, the line between judicial notice and proof-taking is blurred in court trials.

From all the foregoing observations, we believe, and for that reason suggest, that judicial notice should be sparingly used in a criminal case lest prejudicial error result from denial of a defendant's constitutional or statutory rights in the trial of a criminal case.

## JUDICIAL NOTICE IN VEJVODA'S CASE

Under the Nebraska Evidence Rules, the trial court's sua sponte judicial notice was permissible at the point in Vejvoda's trial where adduction of evidence had been concluded and the case was ready for submission to the factfinding process. See Neb. Evid. R. 201(4): "A judge or court shall take judicial notice if requested by a party and supplied with the necessary information." See, also, Neb. Evid. R. 201(6): "Judicial notice may be taken at any stage of the proceeding."

However, from the record in Vejvoda's case, one cannot conclude that the location of the municipal microcosm known as Vine Street or 8th and Oak Streets was known throughout the length and breadth of Hall County and, therefore, a fact "known within the territorial jurisdiction of the trial court." Neb. Evid. R. 201(2)(a). Consequently, we must focus on the alternative expressed in Neb. Evid. R. 201(2)(b), that is,

whether the location of Vine and Oak Streets in Grand Island and the site of Vejvoda's arrest are adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

For resolution of Vejvoda's claim regarding the impropriety of the trial court's judicial notice, we must first identify and characterize the scope of the trial court's "judicial notice," which actually has two components: (1) Vine, Oak, 7th, and 8th Streets exist in Grand Island, which is located in Hall County, and (2) Vejvoda's drunk driving occurred at 8th and Oak in Grand Island. Thus, existence of Grand Island streets is inferentially correlated with Edwards' testimony, producing a conclusion judicially noticed by the trial court, namely, the judicially noticed streets are the same streets mentioned in Edwards' testimony, and, therefore, Vejvoda was arrested in Grand Island.

An inference may be entirely reasonable, yet nevertheless an improper subject for judicial notice.

> [Neb. Evid. R. 201] puts judges and attorneys on notice that underlying assumptions must be analyzed to ascertain whether their validity can be verified and placed beyond practical dispute. Attorneys must be alert to instances . . . where a court's statement, although plausible on the surface, may be based on unverified [and unverifiable] hypotheses.

1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 201[03] at 201-34 (1988).

When a fact is not generally known within the territorial jurisdiction of the trial court, judicial notice may be taken only if an adjudicative fact can be verified by "sources whose accuracy cannot reasonably be questioned." Neb. Evid. R. 201(2)(b). The inference that Vejvoda was arrested in Grand Island is not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Neb. Evid. R. 201(2)(b). We cannot imagine any unimpeachable source or sources which quickly and accurately verify the trial court's inferential determination that Vejvoda's drunk driving occurred in Grand Island. While a map of Grand Island would verify existence of Vine and Oak Streets within the

city, a Grand Island map would not indisputably establish that Vejvoda was driving in that city.

As a matter of judicial notice, the trial court's conclusion that Vejvoda's drunk driving occurred in Grand Island is verifiable only by the cumbersome process of examining all locations outside Grand Island, which might match Edwards' description of a site with "Vine" and "Oak" streets, and then eliminating those locations which are inconsistent with Edwards' testimony about the direction traveled by Vejvoda's vehicle, for example, Vejvoda's car traveled west on 7th Street, turned right from 7th Street onto Oak Street, and stopped at 8th and Oak Streets. In the foregoing process of comparison and elimination, a court would have to consult not only a map of Grand Island, but also maps of cities and towns outside Grand Island and Hall County which have streets designated "Vine," "Oak," "7th," and "8th." Although a court might, after a laborious comparison of virtually innumerable city maps, confirm Edwards' identification of "Vine" and "Oak" as the streets traveled by Vejvoda within Grand Island, such an unavoidably burdensome procedure is not only impracticable but contrary to Neb. Evid. R. 201(2)(b), which specifies that a judicially noticed adjudicative fact must be "capable of . . . ready determination."

A court may take judicial notice concerning the location of streets in a particular political subdivision within the court's jurisdiction. *State v. Scramuzza*, 408 So. 2d 1316 (La. 1982); *Evans Associated Industries, Inc. v. Evans*, 493 S.W.2d 547 (Tex. Civ. App. 1973); *State v. Martin*, 270 N.C. 286, 154 S.E.2d 96 (1967); *Cascio v. State*, 213 Ark. 418, 210 S.W.2d 897 (1948); *United States v. Hughes*, 542 F.2d 246 (5th Cir. 1976). See, also, Annot., Judicial Notice as to Location of Street Address Within Particular Political Subdivision, 86 A.L.R.3d 485 (1978). In the trial of a criminal case, whether a political subdivision has a street identified by a particular name used in evidence is an adjudicative fact for judicial notice, but whether the street location mentioned in testimony is actually within the political subdivision is a matter of reasonable inference by the fact finder. *United States v. Mendell*, 447 F.2d 639 (7th Cir. 1971).

In Vejvoda's case, the trial court could properly take judicial notice that Grand Island, which is wholly within Hall County, has streets named "Vine" and "Oak." Furthermore, by simply referring to a map of Grand Island, the court could properly take judicial notice that the intersection of 7th and Vine Streets is within two blocks of the intersection of 8th and Oak Streets. At that point the site of the offense was an issue submissible to the trier of fact.

Although the location of streets within Grand Island is readily verifiable by reference to a city map, a source capable of ready verification and a cartographic source of information which cannot reasonably be questioned, the county court took another and impermissible step by judicially noticing the inference that Vejvoda was driving in Grand Island. The court's locational inference necessary for venue was not an adjudicative fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The county court erred in taking judicial notice of the inference that Vejvoda was driving in Grand Island and, therefore, that Vejvoda's drunk driving occurred in Grand Island.

If Vejvoda had been convicted in a jury trial, we would reverse Vejvoda's conviction on account of the trial court's invasion of the factfinding process within a jury's province in the trial of a criminal case. However, as mentioned, Vejvoda's case was tried to the court. Although Vejvoda's arrest by Edwards, a Grand Island police officer, does not establish venue, Edwards' official affiliation as a Grand Island police officer was a circumstance bearing on the issue of venue. When combined with other evidence, namely, the trial court's judicial notice of "Vine" and "Oak" as streets in Grand Island, Edwards' testimony supplied a sufficient evidentiary basis for a fact finder's determination that Vejvoda's drunk driving occurred in Grand Island, Hall County, Nebraska. "Harmless error exists in a jury trial of a criminal case when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant." *State v. Watkins*, 227 Neb. 677, 686, 419 N.W.2d 660, 666 (1988). The

preceding principle applicable in a jury trial of a criminal case is equally applicable to a judgment embodying factfinding in the bench trial of a criminal case.

Therefore, the trial court's error in judicially noticing the inferential location of Vejvoda's conduct, namely, drunk driving, is harmless error beyond a reasonable doubt. Vejvoda's conviction is affirmed.

AFFIRMED.

WHITE, J., dissenting.

Today, the majority holds that harmless error occurred during a bench trial of a criminal case when the trial court took judicial notice of venue.

Today's holding conflicts with our holding in *State v. Bouwens*, 167 Neb. 244, 92 N.W.2d 564 (1958). In *Bouwens*, this court affirmed the decision of the district court which dismissed a complaint against the defendant for disturbing the peace. While noting that "[i]t is fundamental that venue must be proven as any other essential fact," *id.* at 246, 92 N.W.2d at 566, the court held that the mere reference to streets and addresses in an unnamed city, standing alone, will not be deemed sufficient evidence for the court to take judicial notice of venue.

Second, as I first noted in my dissent in *State v. Foster*, 230 Neb. 607, 433 N.W.2d 167 (1988), today's holding is another step in the continuing process of making the trial court an active participant in criminal proceedings. Again, I submit that this active participation offends notions of fairness and due process.